HANFORD LOCKWOOD *et al.,* Executors,

*v*

ADDISON ONION.

</div>

1. WITNESS — *competency under act of* 1867. Where it was sought to recover a claim against the estate of a deceased person, and certain notes given by the plaintiff to the testator in his life-time were pleaded as a set-off, it was *held* incompetent for the former, by his own testimony, to impeach the consideration of the notes, no witness in interest having testified to any fact that would bring such testimony by the plaintiff within any of the excepted cases provided for by the second section of the act of 1867.

2. MEASURE OF DAMAGES — *for nursing the sick.* In an action to recover

the value of services rendered in nursing a person sick with a loathsome and offensive disease, the measure of recovery for one not usually engaged in that business should not be greater, in the absence of any express contract on the subject, than what would be a fair compensation to one who renders such services as a business or occupation.

3. New trial — *excessive damages.* In an action for board and services rendered by the plaintiff in nursing the defendant's intestate during his illness, it appeared the deceased boarded and lodged with the plaintiff for a period of some fourteen months. During all that time, except the last month or six weeks of his illness, he was able to get out and attend to business. He was well and kindly attended, and was a most disagreeable patient to have in the house, and, at times, very offensive on account of the character of his disease. For this service the plaintiff was allowed $3,938, which was regarded so excessive as to call for a reversal of the judgment for that cause.

4. Where the verdict of a jury is the result of passion or prejudice, or undue influence, it should be set aside. It is the duty of the court to see that the verdict is not oppressive, and that it is the clear and deliberate judgment of the jury, uninfluenced by improper motives.

Appeal from the Circuit Court of Woodford county; the Hon. S. L. Richmond, Judge, presiding.

This was a claim filed by Addison Onion, against the estate of Ralph Lockwood, for services as nurse, rendered deceased in his life-time, and for board and lodging. A trial by jury in the court below resulted in a verdict and judgment for the plaintiff. The defendants appeal.

Messrs. Bangs & Shaw, for the appellants.

Messrs. Burns & Barnes, Mr. G. L. Fort, Mr. N. W. Lows and Mr. Boal, for the appellee.

Mr. Justice Scott delivered the opinion of the Court:

This cause was before this court at the September term, 1868, and a succinct history of the case may be found in the opinion then delivered. *Lockwood et al.* v. *Onion,* 48 Ill. 325. The judgment at that time was reversed, because the damages

assessed by the jury ($3,411.60) were deemed excessive and oppressive in proportion to the services rendered by the appellee.

On the cause being remanded, the same was again tried at the April term, 1869, and the jury found for the appellee, and assessed his damages at $4,680, which verdict the court set aside, and awarded a new trial. At the August term, 1869, the cause was again tried, and resulted in a verdict for the appellee for $3,938.40, and the court overruled a motion entered for a new trial, and rendered judgment on the verdict. To reverse this judgment, the appellants now prosecute their appeal to this court.

The only errors assigned, that we deem necessary to consider, are, first, that the court erred in admitting improper testimony offered by the appellee; second, that the damages awarded were excessive.

The court permitted the appellee, against the objection of appellants, to testify to the consideration of certain notes given by the appellee to the testator in his life-time, and which notes had been filed by the executors as a set-off to the appellee's supposed claim. This, we think, he was not authorized to do. Parties to the record, and in interest, are made competent witnesses solely by the statute, and the admissibility of the evidence objected to must be determined by the construction to be given to that statute. The evidence given by the appellee tended to impeach the consideration of the notes, and to show that he had never received the amount of money from the testator that the notes expressed on their face. That was a fact occurring prior to the death of the testator, and the testimony offered was, therefore, clearly prohibited by the second section of the act of 1867. It is provided by that section that no party to any civil action, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the first section of that act, when any adverse party sues or defends as executor of any deceased person. To that section, however, there are

a number of exceptions, but the evidence given by the appellee does not come within the provisions of any one of them. No witness in interest had testified to any fact that would bring the testimony, given by the appellee, within any of the excepted cases provided for by the exceptions to that section.

The serious question involved in this record is, whether the damages awarded by the jury, in view of the services rendered by the appellee, are not excessive and oppressive in their amount. When the cause was before this court at a former term, the verdict was not then so high as now, upon substantially the same evidence as is contained in the present record, and the damages were then pronounced to be excessive. It is true that some additional evidence was taken and heard on the last trial. But, for the most part, it is simply cumulative as to the value of the services rendered by the appellee in his attention and care bestowed on the deceased. The only evidence that can be properly denominated new is that which defines, with more accuracy, the disease with which Lockwood was afflicted. There is evidence tending to show that the disease was of the most loathsome and revolting character. There is, however, some evidence tending to show that the physicians who pronounced on the character of the sickness were mistaken in the pathology of the disease with which he was afflicted. By whatever name the disease may be called, it is very apparent that it was of such a character as to render the duties of the nurses very disagreeable. Few persons could be employed to undertake the care of the person thus afflicted, and, as was said in the former opinion, the faithful nurse ought to be well and liberally paid. In the absence of any special contract, such services, like all other labor, can only be remunerated by a reasonable compensation. Such is the rule of law. If the appellee did not stipulate for extraordinary compensation, the law implies that he undertook to perform the services for a reasonable compensation. The appellee was under no legal obligation to perform the services, and if he was not willing to do so for reasonable wages, it was his plain duty to advise the

decedent that he would expect extraordinary compensation or to decline to enter upon the discharge of the services. Having failed to make a contract for himself, he is estopped from complaining that the rule of compensation that the law fixes in the absence of any special contract is unreasonable and inadequate.

The evidence discloses that the deceased boarded and lodged with the appellee for a period of some fourteen months. During a large portion of that time, and perhaps all the time, except the last month or six weeks of his sickness, he was able to go out and attend to business. He was kindly attended by the appellee and his wife, and was furnished with every comfort that their small apartments would afford while he was in their house. The evidence also shows that he was a most disagreeable patient to have in the house, and very offensive at times. For this service, the jury allowed the appellee at the rate of between $8 and $10 per day for the entire time that the deceased was at his house.

A multitude of witnesses were produced on the trial, all of whom testified that it was worth $10 per day to take care of the deceased as appellee and his family did. It is perfectly manifest, from the manner in which these witnesses testify, that they were not speaking of the reasonable value of such services to a person who was willing to embark in the business of nursing a person so afflicted. They seemed to fix the value of the services by their own unwillingness to engage in that kind of business. The most of these witnesses were frank enough to say that they had no personal knowledge of the value of any such services, nor what would be deemed reasonable wages for persons who would be willing to undertake to render such services. It is not intended to impugn the motives of any of these witnesses. Doubtless they intended to speak frankly and honestly when giving their testimony. But there is certainly some very extraordinary and extravagant testimony to be found in this record. Some of the witnesses fix the compensation for the services of appellee at most fabulous prices per day, and one witness testifies that he would not be willing to per-

form the services for a million of dollars a day. These witnesses certainly did not intend that their testimony should be taken and understood literally by the jury. It was only an extravagant way of saying that they, themselves, could not be induced, for any reasonable compensation, to undertake to perform the services. If this was their meaning, and they certainly did not intend that their evidence should have a literal meaning, it is doubtless the truth. This is true also with reference to other avocations in life. There are certain kinds of labor, not at all disreputable in their character, that it is not possible to employ a certain class of persons in society to perform for any reasonable compensation. Yet, if they do undertake to perform such services, in the absence of any special contract the law will allow them for such services only a reasonable compensation; that is, such wages as are usually charged by persons engaged in that kind of labor.

It is well known that there are persons whose sole occupation in life is the nursing and taking care of the sick. It is, with them, a kind of profession, and the price and value of their services is as well known and understood as that of any other profession or business occupation.

The evidence in this case discloses, that the reasonable wages of an experienced nurse is very much less than what the jury have allowed the appellee. There is no dispute in the evidence that the services of such a person can be procured for from $3.00 to $5.00 per day. The witnesses testify that they would not do it for any such compensation. Certainly not, for that is not their occupation. But, if a party undertakes to perform services out of his line of business, he must expect to receive only such compensation as is usually paid to persons engaged in that business or occupation.

It is insisted by the appellee, that, where there is a conflict of evidence, and the jury have fixed the damages at an amount between the highest and lowest estimates of the witnesses, the verdict will not be disturbed. As a general rule, that is true, but it is only true where the court can see that the ver-

dict is the result of the deliberate and unprejudiced judgment of the jury. There is a class of cases sounding merely in damages, where the testimony touches the sympathies or excites the prejudices of a jury, in which the court must always retain a supervisory control of the verdict, otherwise great injustice would frequently be done. We can not say that the verdict in this case is the result of the clear, cool and dispassionate judgment of the jury. Indeed, we think it was not. The very fact that some of the jurors who tried the cause at the former trial were called as witnesses, and required to state their judgment of the value of the services of appellee, not from any actual knowledge of their own, but upon the hypothetical case that the evidence they heard was true, shows that it was the intention of the counsel to produce a sensational effect upon the minds of the jury. In this the counsel succeeded in producing this very verdict, which is of no benefit whatever to the appellee, but a positive injury.

In the case of *Booth et al.* v. *Hynes et al.*, 54 Ill. 363, we said there was no fixed and inflexible rule on this question of granting new trials, and especially is this true in actions sounding purely in damages. Where there is a conflict of evidence, or where the credibility of witnesses is involved, and there is nothing in the evidence to produce an undue impression on the minds of the jury, the almost universal rule is, that the verdict will not be disturbed. But, in cases like this, where the evidence is of such a character as tends to arouse the sympathies of the jury, it is the plain duty of the court to supervise the judgment of the jury, and if the court can see that the verdict is the result of passion, or prejudice, or undue influence, it should, in every instance, set aside the verdict and award a new trial. In other words, it is the duty of the court to see that the verdict is not oppressive, and that it is the clear and deliberate judgment of the jury, uninfluenced by any improper motives. If such was not the general rule, the sympathies and passions of the jury, which for the time may cloud the

better judgment of the jurors, would fix the rule by which the damages are to be assessed, and not the law and the evidence.

For the reasons given in this and the former opinion, this judgment will be reversed and the cause remanded.

*Judgment reversed.*