# St. Louis, Alton & Terre Haute R. R. Company

## *v.*

## William Manly.

1. INSTRUCTIONS—*should be based on the evidence.* As a general rule, instructions must be founded on the evidence, and although the instruction asked may state a correct principle of law, still, if it is based on a hypothetical state of facts not developed in the case, it ought to be refused. Such an instruction may tend to mislead the jury, and for that reason it would be error in the court to give it.

2. In an action for personal injuries to the plaintiff, occasioned by the alleged negligence of the defendant, the court, at the instance of the plaintiff, instructed the jury that if the defendant was guilty of wilful misconduct in causing the injury, in fixing the amount of their verdict they were not confined to the actual damage sustained by the plaintiff. Upon appeal to this court, from a judgment against the defendant, the giving of such instruction was regarded as error, for the reason there was no evidence that the injury was the result of wantonness or wilfulness on the part of the defendant, and upon the plaintiff insisting that the defendant was not injured by the instruction, for the reason that the jury did not award vindictive damages, as the verdict did not appear to be excessive for the injury sustained, it was *held*, the attention of the jury being directed to the question of wilful neglect as an element of increased damages, the presumption arose that the instruction, coming from the court, had its due influence and made its impression on the minds of the jury, against the defendant.

3. JURY—*should find the facts—not the court.* Instructions should not assume the existence of facts to be determined in the case, but leave them to be found by the jury, from the evidence.

4. NEGLIGENCE IN RAILROADS—*of comparative and contributory negligence.* While it is the imperative duty of railroad companies to use all reasonable and proper precautions at public road-crossings, and everywhere else, to prevent collisions and accidents, still a like duty rests upon the citizen. And where a person, on approaching a railroad crossing with a wagon and team, does not avail himself of his sense of sight and hearing, when by the proper exercise thereof he could have avoided a collision with a train at the crossing, he will be regarded as unusually negligent on his part, and can not recover for the injury resulting, in an action against the company, where the only neglect of the servants of the company, in charge of the train, was the omission to give the required signal on approaching the crossing.

5. It is not the duty of a railroad engineer, on nearing a public road-crossing, to stop his train for the purpose of avoiding a collision with a

wagon and team he may see approaching the crossing, though by applying the brakes he could do so in time to avoid a collision. The engineer in such case has a right to suppose, when he sees the wagon at a distance approaching the crossing, and the proper signal is sounded, that the person in charge of the team, in obedience to the known custom of the country, will stop, and not attempt to pass immediately in front of a swiftly advancing train. Though should the engineer, on approaching the crossing, see a team on the track when it would not be likely to get across in time to avoid the train, he should use every means in his power to check his train and prevent the collision.

APPEAL from the Circuit Court of St. Clair county ; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Messrs. WILEY & PARKER, for the appellant.

Mr. GEORGE B. BURNETT, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was an action instituted by the appellee against the appellant, to recover for personal injuries to himself and to his property, resulting from a collision of the train as the appellee was about to cross the track of appellant's road, which injuries, it is alleged, were occasioned by the negligence and unskillfulness of the agents and servants of the company.

The accident occurred in July, 1866, within the corporate limits of the town of Bunker Hill. The appellee resided in the town, and had for some six years previous to the accident, and was familiar with the railroad crossings in the vicinity, and with the times of the passing of trains at that station. On the day of the fatal accident, the appellee, with his son, had occasion to go out of town on business, with his horse and wagon, and their route would lead them over the Blackburn road, which crosses the track of the appellant's road. The railroad at that point runs nearly directly east and west, and the wagon road that passes over it does not cross it at right angles, but diagonally, from the southeast to the northwest. The appellee and his son occupied the seat in the wagon, which was loaded with some empty barrels. There was another man

in the wagon at the time, but he escaped without injury before the collision occurred. The wagon road, over which the appellee was passing, would lead him in a northwest direction from the town, and the relative position of the wagon road and the railroad would bring the appellee almost facing the train as it came from the west. The train that caused the injury, came from the west in the afternoon, and was a passenger train on its regular time. By the collision, the son was instantly killed, and the appellee was so severely injured that he did not recover his senses for near a month after the accident. The appellee states he did not see the train or hear any signals as he approached the crossing, and that his attention at the instant was attracted to an accident to a load of hay in another direction. He states the object of his trip ; that his attention was fixed on his business, and that he was in a hurry to make the trip and return before nightfall ; and that, although he knew the hour of the arrival of the train, if his attention had been called to it, still it never occurred to him that a train might then be approaching. The appellee states it was his usual custom to check up his horse before reaching the crossing, and thinks he did so in this instance, but saw nothing, and heard no signals to indicate the near approach of the train, and that the first indication he had of approaching danger, the train was upon him. The witness Lewellyn, who occupied a seat in the wagon between the appellee and his son, states he heard the train coming when they were at some distance from the crossing, and called to the appellee to notify him of the fact. The appellee stopped for an instant, and then moved on, when the witness again called to him that the train was coming, when he stopped the second time, and again started up to go over the crossing. The witness seeing the imminent danger, leaped from the wagon just in time to save his life. The appellee denies he heard the witness, Lewellyn, call his attention to the approach of the train, but states he was in a hurry, and that his attention was directed to a load of hay tipping over in the opposite direction from the approaching train.

The engineer and fireman both testified that the usual signals were given for the requisite distance before reaching the crossing, and that as soon as the appellee was discovered on the track, the engineer put on the brakes and stopped the train as soon as possible. Some of the witnesses, in the vicinity and near the scene of the disaster, state they did not hear the bell or the whistle, but the record contains the affirmative evidence that the bell was rung and the whistle sounded. By this fearful accident the son of the appellee was instantly killed, and severe and permanent injuries inflicted upon appellee; and as to the extent of the injuries sustained, there is no dispute. They caused much mental and physical suffering, and are of a permanent character, from which he will probably never recover.

Upon substantially this evidence, a trial was had, which resulted in a verdict for the appellee for $2,000. The court overruled a motion for a new trial, and rendered judgment on the verdict, to reverse which judgment the appellant brings the cause to this court.

The principal errors relied on to reverse this judgment, are: 1st, that the court gave improper instructions to the jury, at the request of the appellee; 2d, that the verdict is against the weight of the evidence.

The court, at the request of the appellee, instructed the jury that "the amount of damages to be recovered for personal injuries, rests much in the discretion of the jury, and they have a right not only to compensate the plaintiff for all moneys by him paid out, and for personal injuries, but to punish the defendant according to the circumstances of the case, if the defendant has been guilty of wilful misconduct in perpetrating the injury."

It is true, that if the agents and servants of the company wilfully and wantonly commit an injury, the party injured may recover in an action for personal injuries beyond the actual damages sustained, in some instances as punitive damages, but certainly by way of compensation for the indignity and outrage

committed, and for mental and physical suffering endured. *The Chicago & Rock Island R. R. Co.* v. *McKean*, 40 Ill. 218.

Waiving all formal objections that might properly be taken to this instruction, the principal objection lies in the fact that it is not applicable to the facts in this case. As a general rule, instructions must always be founded on the evidence, and although the instruction asked may state a correct principle of law, still, if it is based on a hypothetical state of facts not developed in the case, it ought to be refused. An instruction that embodies a correct principle of law, if not applicable to the facts, may tend to mislead the jury, and for that reason it would be error in the court to give it. It does not appear that the injury complained of was the result of wilfulness or wantonness on the part of the agents and servants of the company, and therefore the attention of the jury was directed by the instruction to the consideration of a question not involved in the case.

It is insisted that the appellant was not injured by the instruction, for the reason that the jury did not award vindictive damages. We have no means of knowing whether they did or not. The attention of the jury was directed to that fact as an element of increased damages, and we may presume that the instruction, coming from the court, had its due influence, and made its impression on the minds of the jury against the appellant. If so, the instruction was clearly erroneous in this instance.

The fifth instruction of the series, given in behalf of the appellee, is still more objectionable. It tells the jury, and correctly, too, that it was the duty of the company to use all reasonable efforts to prevent the injury, but by its phraseology it assumes that the agents and servants of the company, when they saw the wagon approaching the crossing, did not use every reasonable effort to avoid the collision and injury. This was the exact question involved in the case, and it was the exclusive province of the jury to determine that fact. An

instruction that, by its terms, assumes the existence of negligence in the servants of the company, invades the province of the jury. The instruction makes this impression on our minds, and we can not doubt that it made the same impression on the minds of the jury; and if so, it was error in the court to give it.

This instruction is also liable to another objection. It tells the jury, that as soon as the wagon was discovered at a distance when it would not be likely to get across in time, it was the duty of the servants of the company to use all means in their power to prevent a collision. If this instruction was only intended to apply to the facts of the case, after the wagon was seen on the track, and had been so limited by its terms, it would state a correct principle of law. But we can see how this instruction would mislead the jury, in its application to the facts in this case. The evidence indicates that the engineer could have seen the wagon, and it may be he did see it approaching the road when, perhaps, the train was a quarter of a mile distant from the crossing, and it would have been possible, if the brakes had been applied when the wagon was first discovered, to have stopped the train in time to have avoided the collision. But was it the duty of the engineer, when he first saw the wagon, at a distance, approaching the crossing, to apply the brakes and stop the train, to allow the appellee time to cross with his wagon? No such duty has ever been required of railway companies. This would be extending their duties to an unprecedented extent. While it is the imperative duty of the company to use all reasonable and proper precautions at public road-crossings, and everywhere else, to prevent collisions and accidents, still a like duty rests upon the citizen.

When the engineer saw the wagon at a distance, approaching the crossing, and the signal was sounded, he had a right to suppose the appellee, in obedience to the known custom of the country, would stop, and not attempt to pass immediately in front of a swiftly advancing train; and it was not his duty to

20—58th Ill.

put on the brakes and stop the train to allow the appellee time to pass the crossing. The law made it the duty of the appellee, himself, to look out for the approach of a train, and if one was discovered, it was his duty to stop. *The Chicago & Rock Island R. R. Co.* v. *McKean, supra.* The appellee could not have reasonably expected that the train would stop for his convenience. We are, therefore, of opinion that this instruction was not applicable to the facts in the case, and under the circumstances it would tend, and did tend, to mislead the jury.

The grave question in the case arises on the second error indicated, viz: that the verdict is against the weight of the evidence.

The doctrine of comparative negligence has been recognized in this State. *The Galena & Chicago Union R. R. Co.* v. *Jacobs*, 20 Ill. 478. It was formerly held, in some of the earlier cases in this State, and in some of the English and American authorities, that before a party injured could recover, he must show he was himself without fault. That rule has been modified to some extent by recent cases.

If the party injured is alone in fault, and the accident is the result of his own negligence, the law is well settled that he can not recover. *The Aurora Branch R. R. Co.* v. *Grimes*, 13 Ill. 585 ; *Dyer* v. *Tolcott*, 16 Ill. 300 ; *The Galena & Chicago Union R. R. Co.* v. *Fay*, 16 Ill. 558.

If both parties are equally in fault, the rule is the same.

The cases in this court that establish the doctrine of comparative negligence, hold, that where there have been faults on both sides, still the plaintiff may recover, where his negligence is slight, and that of the defendant is gross in comparison with that of the plaintiff. The rule has been extended to include cases where the negligence of the plaintiff has contributed in some degree to the injury complained of. The fact that a party has been guilty of some degree of negligence, does not excuse gross negligence, or authorize another party to recklessly and wantonly destroy his property, or commit a personal injury. *The Chicago & Alton R. R. Co.* v. *Gretzner*, 46 Ill. 75.

There can be no pretense in this case that the injury was wilfully committed; no motive can be assigned for such a purpose; the company did not desire to injure the appellee, or his property. If both parties were guilty of negligence, the inquiry arises, which was guilty of the higher degree of negligence? If we rely solely on the testimony of the appellee, and exclude all that was offered on the part of the defense, we find that the only facts relied on to show negligence on the part of the agents and servants of the company, is, the failure to ring the bell or sound the whistle for the requisite distance before reaching the crossing, and the further fact that there was an open board fence, rather higher than ordinary, that somewhat obstructed the view of the approaching train. It is not pretended there was time enough for the engineer to have stopped the train after the wagon got upon the track, before the collision. The whole evidence tends to show, that at the very instant the wagon reached the track, the collision occurred; it was too late then to avoid the fatal results.

It has been held by this court, in the *Chicago & Rock Island R. R. Co.* v. *McKean, supra,* that the mere omission to ring the bell or sound the whistle will not, *per se,* render the company liable. It must be a just inference from the evidence that the accident was caused by "reason of such neglect." How can this be shown? Simply by proving that the party himself was in the exercise of due care and caution.

The evidence in the record leaves the impression on the mind—and we can not escape it, even if we take the most favorable view—that the appellee did not use the ordinary and proper precautions in attempting to pass the crossing. He states he was not thinking of the train, although he knew that was the hour for its arrival at that station. The evidence shows his mind was engrossed with his business, and, as he states himself, he was in a great hurry to accomplish his errand and return. He further states he checked his horse an instant, but did not see nor hear the train; that he moved on rapidly, driving his horse in a brisk trot. He also states, which is

doubtless the truth, that if he had looked he could perhaps have seen the train, but that he was not thinking of the train, and that his mind was engaged upon his business, and his attention attracted in another direction.

It does not appear, if we rely solely upon the testimony of the appellee and his witnesses, that he was in the exercise of that degree of care and caution that usually characterize the conduct of an ordinarily prudent man under such circumstances. We must, therefore, conclude that the fearful results of that sad accident must be attributed most largely to his own want of proper care.

Both parties, at the time of the accident, were in the exercise of a lawful right, but the law imposed upon each the duty to observe every reasonable precaution to avoid danger. It was lawful for the company to run their trains, and it was alike lawful for the appellee to pass over the wagon road at the established crossing. . Each had his respective duties to perform. It was the imperative duty of the company to give the usual signals for the requisite distance before reaching.the crossing. It was the like imperative duty of the appellee to look out for the approach of the train, and to observe all reas-. onable precautions before attempting to pass ; and, if solely for the want of such reasonable precaution the injuries occurred, he must bear the consequences, however disastrous. This view of the case leaves entirely out of consideration the testimony offered for the defense.

It appears from the testimony of the witness Lewellyn, that the appellee was twice informed of the approach of the cars, in ample time to have stopped, so as to have avoided the collision and its terrible consequences. It is certain that the witness himself saw the approach of the train, and leaped from the wagon in time to save his own life. If it be true that the appellee was twice warned of the approach of the train, it was recklessness in him to attempt to pass immediately in front of the train, moving at so high a rate of speed ; no prudent man would do it.

We can see no reason for disregarding the evidence of the engineer and fireman, and they both testify the bell was rung and the whistle sounded at the usual distance before reaching the crossing. The fact that the appellee did not hear the signals, by no means proves they were not given. After the accident occurred, the train was stopped, and it was very natural to suppose the events made a very deep impression on the mind. It was the duty of the engineer and fireman to give the usual signals, and the events were such they would certainly remember whether the signals had been given. When in the presence of the dead, they must have remembered whether they gave the usual signals just a few moments before, and if so, no lapse of time would efface it from their recollection. It is true, then, the usual signals were given, or else these witnesses have deliberately sworn to falsehoods. It is not possible for them, under the circumstances, to have been mistaken.

As a general rule, it is true the jury are the judges of the credibility of the witnesses, but they can not capriciously disregard the testimony of an unimpeached witness simply because they desire so to do, or because, under the peculiar facts of the case, they may desire to find a verdict against his testimony. It is the duty of the jury to try the case according to the evidence, and their verdict should be a just conclusion from all the evidence. We know from common observation it is exceedingly difficult for a jury, in a certain class of cases, to observe this rule with fidelity. There is a class of cases where the evidence touches and awakens the sympathies, and it is exceedingly difficult for the juror to exercise that clear and deliberate judgment that ought to characterize all judicial investigations. We conceive this to be one of that class of cases. However much the recital of the injuries and misfortunes sustained by the appellee may touch our sympathy, it affords no just reason for disregarding the well settled principles of the law.

For the reasons indicated, the judgment will be reversed and the cause remanded.                    *Judgment reversed.*