# THOMAS O. SMITH

*v.*

# ALICE E. SLOCUM.

1. TRESPASS TO THE PERSON—*preservation of order in party's family.* The authority to govern is placed by the law in the hands of the father, as the head of the family. It is as unlawful for a grown son or daughter to create a disturbance in the family as for a mere stranger; and the father may as rightfully interpose to preserve the good order and propriety of his household in the one case as in the other.

2. SAME. Where a grown daughter, who had been married and had left her husband and was living in her father's family, got into an angry dispute with a hired girl, and when ordered by her father to leave and go to her own room, refused to do so, and in her dispute with her father, made remarks imputing a want of chastity in her step-mother in her presence, and in that of several others, it was held that the father had a right to protect his wife from such slanderous abuse the same as from a mere stranger, and to exercise his authority as the head of the family in moderation to preserve the order of his family, and if in so doing he used no more force than was necessary, he was not liable in trespass.

3. NEW TRIAL—*finding against the weight of evidence.* Where the testimony of the plaintiff in an action of trespass for personal injury is wholly unsupported as to the material facts, and is contradicted by the testimony of the defendant and several other disinterested witnesses as to such material facts, and no reason appears for rejecting or discrediting the testimony of the defendant and his witnesses, and the verdict of the jury can be supported on no other ground: *Held*, on appeal, that the verdict was against the weight of the evidence.

4. SAME. It is the duty of a jury to find according to the weight of the evidence, and not capriciously on the testimony of a single witness who is a party to the suit, in opposition to the evidence of numerous other unimpeached and intelligent witnesses, who appear to have stated the details of the facts honestly as they saw and heard them.

5. SAME. It is an unwarranted assumption of power in a jury to reject the evidence of a great number of disinterested and unimpeached witnesses and found their verdict alone on that of an interested witness who is a party to the suit. Their verdict should be a just and fair conclusion from the whole evidence.

6. SAME. In all that class of cases sounding merely in damages, where the recital of the facts touch the sympathies or arouse the prejudices to such an extent as to obscure the understanding of the jury and prevent them from exercising their better judgment, it is the plain duty of courts to super-

vise their verdict and see that it is the conclusion of that deliberate judg-
ment that ought to characterize all judicial proceedings, and not the result
of passion or prejudice.

APPEAL from the Circuit Court of DeWitt County ; the
Hon. THOMAS F. TIPTON, Judge, presiding.

Messrs. WILLIAMS & BURR and Messrs. NELSON & ROBY,
for the appellant.

Messrs. BUNN & BUNN and Messrs. CREA & EWING, for
the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court :

This was an action of trespass, to recover for personal in-
juries, brought by the appellee against the appellant in the
circuit court of Macon County, and the venue was subse-
quently changed to the county of De Witt, where a trial was
had, which resulted in a verdict for twelve thousand dollars in
favor of the appellee. A motion was made for a new trial, and
the court required the appellee to remit two thousand dollars
from the verdict, and thereupon overruled the motion and en-
tered a judgment against appellant for ten thousand dollars.

The only point made by counsel that we deem material to
be considered is, whether the verdict is sustained by the evi-
dence, or, rather, whether the verdict is not against the weight
of the evidence ?

The appellee is the daughter of the appellant, and has been
married since 1869, but was living separate from her husband,
and was at the time of the difficulty, as she says, a boarder in
the family of the appellant. The case, on the part of the ap-
pellee, so far as the events that transpired at the house are
concerned, rests entirely on her own evidence. There were a
number of persons present, all of whom give a different version
of the affair.

The controversy that led to the committing of the trespass
complained of, arose with the hired girl in regard to some-

thing which appellee alleges she had been saying about her that was untrue. The girl was engaged in preparing dinner for the family, and when the disturbance commenced she told the wife of the appellant that if the appellee did not leave she would. The appellant was called, and on entering the room found the appellee and the girl engaged in an animated quarrel. He requested his daughter, the appellee, to leave the kitchen, which he says she did, but soon returned, and again renewed the controversy with the girl. The appellant was again called in to quiet the disturbance, and the respective statements of the events that there occurred are as opposite as truth and error.

It must be conceded that the appellee was in error in the first place, and that her wrongful act was the cause, to some extent at least, of the consequences that followed. Her own statement is, that she was a boarder at the house of the appellant, and it was certainly improper in her to engage in a difficulty with the hired help to the annoyance of the family. If the girl had been saying things about her that were untrue, she ought to have gone to her father with her grievances, and if, upon inquiry, it had turned out to be true it would have been his plain duty to dismiss the girl from his service.

It appears from the history of the difficulty, as given by the appellee herself, that when the appellant was called into the kitchen to quiet the disturbance, he requested her to go to her own room, but that she declined to go on two grounds: first, that she had done nothing for which she ought to be sent to her room ; and, second, that she had as much right there as he had, for the reason, that the house had been purchased with money that had belonged to her mother. In the conflict that there ensued, she says, that the appellant then took hold of her, and most cruelly beat and otherwise ill-treated her, in consequence of which, she suffered great bodily and mental pain, and that her health has been permanently impaired.

The appellant denies having inflicted any physical injuries on the appellee, and his account of the unhappy affair is cor-

roborated by the evidence of Mr. and Mrs. E. O. Smith, the hired girl, Emma Flory, and, to some extent, by that of the two younger sisters, members of the family of the appellant. It appears that the mother of the appellee is dead, and that the appellant had been married a second time, and, perhaps one of the exciting causes of the conflict was a remark addressed to the appellant, in regard to her step-mother, who was present in the room. The remark was addressed to the appellant in the presence of his wife and others, and implied that she was an unchaste woman previous to her marrige with appellant. The appellee explicitly denies having used any language toward her step-mother that was not entirely respectful. It is, however, distinctly sworn to by three witnesses, the appellant, Mrs. E. O. Smith, and Emma Flory, that the improper language was used. Unless these witnesses have deliberately committed perjury, the objectionable words were addressed to the appellant in regard to his wife in her presence. This does not imply that the appellee has willfully sworn to any thing that is untrue. By no means. She was in anger and doubtless very much excited, and may have used the objectional words and may not have remembered it. There is no such excuse for the other witnesses. They could not say that they remembered the utterance of the words, when, in fact, no such words were used. Their testimony is either the truth, or it is willful and corrupt falsehood.

The language addressed to the appellant in regard to his wife was such as no husband could permit, whether by a member of his own family or a stranger. Had a stranger used such slanderous words to the appellant in his own house in regard to his wife no one would deny his right to have ejected him at once from the premises. He would have precisely the same legal right to protect his wife from such slanderous accusations by a member of his family as from a stranger. The law makes no distinction.

If we shall take the most favorable view possible of the case the appellee had no right to continue to wrangle with the hired girl after the appellant had requested her not to do so. She

ought to have left the room. This she refused to do, and when the appellant undertook to assert his authority to preserve the peace of his household a struggle ensued. She resisted with all the strength she had, and if the evidence on the part of the defense can be relied on, the appellant did not use any more force than was absolutely necessary to remove her from the room.

The authority to govern must rest in some one, and the law has placed that power in the hands of the father as the head of the family. His right to exercise such authority in moderation and justly will not be denied. It is as unlawful in itself for a grown son or daughter to create a disturbance in the family as for a mere stranger, and the father may as rightfully interpose to preserve the good order and propriety of his household. It is admitted by the appellee that she was engaged in an angry dispute with Emma Flory, and that she refused to submit to the authority of the appellant when requested to do so, and no reason is perceived why he could not interpose to preserve the peace of his family if he used no more force than was absolutely necessary for that purpose.

It is insisted that inasmuch as the jury saw the several witnesses and heard them testify and have given credit to the evidence of the appellee by finding the issues for her, under the decisions of this court that the jury are the judges of the credibility of the witnesses, the verdict ought not to be disturbed.

The jury, in order to be able to find the verdict which it did, had necessarily to reject all the evidence offered for the defense as unworthy of belief. The verdict could be found on no other hypothesis.

The facts relied on to support a recovery are sustained alone by the evidence of the appellee. Her testimony is to the effect that the appellant committed a most wanton assault upon her. She says that the marks of violence were perceivable on her person for days and weeks afterward, and that her health has been permanently impaired.

The appellant solemnly denies that he inflicted any injuries

on the person of the appellee. He says that she was disturbing the peace of his family on a Sunday morning; that he requested her to desist, and on her refusal he undertook to make her go to her own room. The evidence of the appellant as to the events that transpired is fully corroborated by that of three or four unimpeached witnesses, who were present and saw the entire struggle between the parties.

Could the jury properly reject the testimony of the several witnesses for the defense and find their verdict solely on the evidence of the appellee? This is the real question in the case.

It is said that the appellee is, to some extent at least, corroborated in her evidence by disinterested witnesses; that the bruises that were seen on her person by the physicians and others must have been produced by blows inflicted by the appellant, and were the cause of the sickness that ensued.

Here again the evidence greatly preponderates in favor of the appellant. The appellee states that her health had always been good previous to the difficulty. Certainly as many as four of the lady witnesses all testify that she had previously complained to them of the same sickness. All of these witnesses, with the exception of one, were her daily companions, and it is not unreasonable that they should have talked with her on the subject of her health. It does not militate against the testimony of these witnesses that the appellee had not talked to others of her acquaintance on this subject of her sickness.

The fullest credence may be given to the medical testimony, and it in no wise conflicts with the evidence given for the defense. The witnesses all state that, in the struggle, the appellee threw herself upon the stairway and on the floor at the head of the stairway with great violence when the appellant was some distance from her, which would account for the bruises discovered by the physicians and others on her person, and would, perhaps, be sufficient to produce the results testified to by the medical witnesses.

It is manifest that the jury arbitrarily rejected all the evidence offered for the defense and relied solely upon that given

by the appellee. This they had no right to do. It was the duty of the jury to find according to the weight of the evidence, and not capriciously on the testimony of a single witness. By no fair construction can it be said that the testimony of the appellee outweighs the evidence of the numerous witnesses on behalf of the appellant, or that she is entitled to any more credit than any one of them.

It is only just to say that the appellee and all the witnesses on the part of the defense have stated the details of the difficulty honestly as they believed that they occurred, but it is most reasonable to say that the theory that is sustained by the greatest number of intelligent and unimpeached witnesses is the true one and ought to have been adopted by the jury..

As a general rule, it is the province of the jury to judge of the credibility of the witnesses and to say what weight shall be given to the evidence; but then they must do so intelligently and not arbitrarily. We said, in the case of the *St. L. A. & T. H. R. R.* v. *Manly,* 58 Ill. 300, that the jury could not, capriciously, disregard the evidence of an unimpeached witness simply because they desired to do so, or because they might wish to find a verdict against his testimony. So we say in this case that it was an unwarranted assumption of power in the jury to reject the evidence of so great a number of disinterested and unimpeached witnesses and found their verdict alone on that of an interested witness, and herself a party to the record. This would be a perversion of the plainest principles of justice.

It is the duty of the jury to try the case according to the evidence, and their verdict should always be a just and fair conclusion from the whole evidence. As we said in the case cited above, we know, from common observation, that it is exceedingly difficult for juries, in a certain class of cases, to observe this reasonable and just rule. This is eminently true in that class of cases sounding merely in damages where the recitals touch the sympathies or arouse the prejudices to such an extent as to obscure the understanding of the jury and prevent them from exercising their better judgments. In all that

class of cases it is the plain duty of the court to supervise the verdict and to see that it is the conclusion of that deliberate judgment that ought to characterize all judicial proceedings, and not the result of passion and prejudice. *Lockwood* v. *Onion,* 56 Ill. 506; *St. L. A. & T. H. R. R.* v. *Manly, supra.*

The case at bar comes within the principles of the cases cited.

The recital of the wrongs which the appellee may have honestly believed she had suffered at the hands of the appellant would touch the sympathies of any one, but that affords no just reason for disregarding the well-settled rules of law.

No satisfactory reason has been suggested, and none can be, why the evidence given by so many witnesses should be rejected and that of the appellee credited, which is certainly uncorroborated as to the principal facts, and the verdict based on it.

In view of the evidence we can not say that the verdict is the result of the deliberate judgment of the jury uninfluenced by any improper motives or any undue sympathy for appellee. Indeed, we think it is not. The jury have evidently misjudged as to the weight of the evidence. It can not be justly said that the weight is on the side of the appellee.

In our opinion this verdict is against the weight of the evidence, and the judgment, for that reason, is reversed and the cause remanded.

*Judgment reversed.*