## The Wabash Railroad Co. v. Thomas Monegan, Adm.

1. INTOXICATION—*Not a Bar to a Recovery for Personal Injuries.*— Intoxication is not a bar to a recovery of damages for personal injuries, but it is a circumstance to be considered in determining the question of contributory negligence.

2. NEGLIGENCE—*Duty of Persons About to Cross a Railroad Track.*— It is the duty of every person about to cross a railroad track to approach cautiously and endeavor to ascertain if there is present danger in crossing, as all persons are bound to know that such an undertaking is dangerous, and that they must take the proper precautions to avoid accidents in so doing, otherwise they can not recover for injuries received thereby.

3. SAME—*What is Culpable Negligence in Persons About to Cross Railroad Tracks.*—As a general rule it is culpable negligence to cross the track of a railroad without looking in every direction that the rails run to make sure that the road is clear; so also to attempt to drive a team across the track in view of an approaching locomotive.

**Trespass on the Case.**—Death from negligence. Appeal from the Circuit Court of Christian County; the Hon. WILLIAM M. FARMER,

Judge, presiding.  Heard in this court at the November term, 1900.
Reversed.  Opinion filed February 28, 1901.

C. N. Travous, attorney for appellant.

James B. Ricks and Wm. M. Provine, attorneys for
appellee.

Mr. Justice Wright delivered the opinion of the court.

Near the hour of 9 o'clock on the evening of August 10,
1898, William Monegan was killed by a fast train of appel-
lant at the crossing of Fourth street in the village of Mor-
risonville, and his death having been attributed to the
negligence of appellant, this suit was brought by his
administrator, and upon the trial the jury returned a ver-
dict for $3,170, upon which the court gave judgment, after
having overruled appellant's motion for a new trial, and to
reverse the judgment, this appeal has been brought to this
court, it being argued for reversal that the court erred (1)
in refusing to instruct the jury at the close of the evidence
to find for the defendant, (2) the court admitted improper
evidence and rejected competent evidence, and (3) erred in
the instructions given and refused.

Morrisonville, a station on appellant's line, is a village of
about one thousand inhabitants.  Fourth street is one of the
regular crossings in the village.  The deceased had lived
near the village for many years, and was an industrious
farmer, and prosperous, and on this particular day had been
engaged in hauling oats from his farm southeast of the
village to an elevator on the southeast side of the railroad,
the last load having been discharged between six and seven
o'clock in the evening.  Monegan returned to the elevator
office about seven o'clock on the evening in question, to
get his pocket knife that had been left there, after which he
went to the northwest side of the railroad, and was observed
by several of the witnesses near the saloons in that neigh-
borhood until near the hour of nine o'clock.  In the
presentation of plaintiff's case there was no eye witness to
the accident that caused the death of William Monegan,
and among other witnesses produced by the plaintiff to

prove his character as a careful man, was John Morris, who testified that his habits were such that he was careful in business transactions; " would call him a reasonably careful man; I knew he frequently came to Morrisonville and became intoxicated; know he was drinking some this very day; can not say how bad he was; I know he was drinking; I could tell it plainly when I saw him; I did not see him walking, but I do not think he was far enough along to stagger; I do not think I stated he was very badly intoxicated and staggered; I do not think I put it that strong; I saw him three times that afternoon; first about two o'clock; he was sober then; the next was between five and six o'clock; he was drinking then; then I saw him about seven o'clock; he was much more under the influence then than before; I considered him intoxicated the last time I saw him; he was pretty badly intoxicated; I called him intoxicated; I considered he was pretty careful, even if he was intoxicated, in the business I had with him; with reference to the condition I saw him in there, it was a pretty ordinary thing: too much so; it was frequent; I suppose the majority of times he came to Morrisonville he would be intoxicated, if he stayed in town." In connection with this testimony of one of the plaintiff's witnesses all the other evidence in the case tends to prove that the deceased was in the habit of getting intoxicated, and " the majority of times he came to Morrisonville he would be intoxicated, if he stayed in town." On this particular day he stayed in town, with no special business from near six o'clock to nine o'clock, and was seen by all the witnesses, who saw him during that time, in the vicinity of the saloons. To us who have read all the evidence in the record and considered it, there is no reasonable doubt that at the time William Monegan tried to cross the railroad, when he met his death, he was in a state of intoxication bordering on mental aberration. This we conclude from the evidence introduced by the plaintiff alone. While this fact is not a bar to the right of recovery, it is a circumstance to be considered in determining the question of contributory negligence.

It was contended upon the trial, and the same insistence is renewed in this court, that appellant failed to ring a bell or sound a whistle continuously for at least eighty rods from the crossing at Fourth street. However this may be, the undisputed evidence introduced by the plaintiff is that the station whistle, a long-continued blast, was given; there was a freight train waiting on the siding, and that gave answering signal, which whistled twice, and the approaching train then gave the through town whistle, and the testimony of the witnesses was that the noise of the train could be distinctly heard; the noise and roar of the train all the time from the first whistle could be heard distinctly. In addition to this the engineer of the fast train testified, and his testimony is in effect undisputed, that the whistling post is one mile from Morrisonville, and from the time he left that post until he reached Fourth street crossing he sounded the regular station whistle, which is one long blast; immediately after doing that he sounded one long blast and one short blast, after which he came in range of the first road crossing northeast of Morrisonville for which he gave two long and two short blasts, and about that time the freight train on the siding gave a signal, to which he responded two short blasts of the whistle, after which he whistled for another crossing, and after this in response to another signal from the awaiting freight train, he gave two other short blasts of the whistle, and about the same time he whistled for the crossing of Fourth street, and from the time he left Decatur, by means of an automatic device operated by air pressure, the bell was continuously rung until after the accident that resulted in the death of William Monegan. We believe from all the evidence there is no reasonable doubt the bell was rung continuously as the law required, but if this was omitted it is not reasonable to believe a person who did not heed the several whistles of both trains, would have heard or given attention to the bell. The engineer, also, was the only eye witness, so far as disclosed by the record, of the death of Monegan, who testified, and it is undisputed, that within 250 feet of the cross-

ing of Fourth street, an impossible distance in which to stop the train, he first discovered the team of horses driven by a man standing up in the wagon, doing everything in his power to get the team over the crossing; was whipping the horses with the lines over their backs to induce them to cross, when he, the engineer, did everything in his power to stop the train without effect. The evidence in the case proved the view from Fourth street of the approaching train was obstructed by a pump house, the station house, water closet, water tank, and telegraph poles, but there is no evidence to dispute the fact, that from the long residence in the neighborhood and acquaintance of the deceased with these surroundings, he was not as fully cognizant of these conditions as the officials and employes of the appellant themselves. In truth, in view of such surroundings, a person in possession of his common faculties, in the exercise of ordinary care, would naturally take the precaution incident to a place of danger of this kind, and ascertain by the sense of hearing, and otherwise by observation, whether it was safe to make the crossing at a particular time.

It has been frequently held by courts of last resort, not as a matter of law, but in passing upon the ultimate facts, that to cross a railroad under similar circumstances as disclosed in this case, constituted such contributory negligence as to preclude a recovery.

In C., B. & Q. R. R. Co. v. Lee, 68 Ill. 576, it was said that it is as much the duty of a person about to pass a railroad crossing to look for, as it is to listen for signals of danger. In C., R. I. & P. R. R. Co. v. Bell, 70 Ill. 102, it was said :

"It is the duty of persons about to cross a railroad, to look about them, and see if there is danger—not to go recklessly upon the road, but to take the proper precautions themselves to avoid accidents at such places. If a party rushes into a danger which by ordinary care he could have seen and avoided, no rule of law or justice can be invoked to compensate him for any injury he may so receive. C. & A. R. R. Co. v. Gretzner, 46 Ill. 82; and see St. L. A. & T. H. R. R. Co. v. Manly, 58 Ill. 300.

And it is the general rule, that it is deemed culpable neg-

ligence to cross the track of a railroad without looking in every direction that the rails run, to make sure that the road is clear, as also to attempt to drive a team across the track of a railroad in full view of an approaching locomotive.   Shearman and Redfield on Neg., Secs. 488, 489, and cases cited in notes."

In I. C. R. R. Co. v. Godfrey, 71 Ill. 500, it was again said that as a general rule, it is culpable negligence to cross the track of a railroad at a highway crossing without looking in every direction that the rails run to ascertain whether a train is approaching, and the same rule is repeated in I. C. R. R. Co. v. Goddard, 72 Ill. 567, where it is said the court has repeatedly held that it is the duty of persons about to cross the track of a railroad to look about them and see if there is danger.   And again in I. C. R. R. Co. v. Hetherington, 83 Ill. 510, it was again repeated that the court had often held it to be the duty of persons about to cross a railroad track to look about them and see if there is danger; not to go recklessly upon the road, but to take the proper precautions themselves to avoid accidents at such places.   In L. S. & M. S. R. R. Co. v. Hart, 87 Ill. 529, it was said:

" This court has time and again decided that it was the duty of every person about to cross a railroad track to approach cautiously, and endeavor to ascertain if there is present danger in crossing, as all persons are bound to know that such an undertaking is dangerous, and that they must take the proper precautions to avoid accidents in so doing, otherwise they could not recover for injury received thereby."

And in Wabash, St. L. & P. Ry. Co. v. Neikirk, 15 Ill. App. 172, it was said:

" The settled doctrine of the courts of this State, supported by a long line of unbroken authorities, is that it is the duty of a person about to cross a railroad track to look and listen for approaching trains, and the neglect of that duty is such gross negligence as precludes all right of recovery in case of collision."

We have cited the foregoing decisions of courts of final resort as to the facts, not as to the law; for what is or is not

negligence is always left, by the later decisions of our
Supreme Court, to be decided as a question of fact. Each
particular case must, of course, be decided from all its sur-
rounding circumstances, and from such surroundings it must
be determined whether such contributory negligence on the
part of the person injured has intervened to prevent a recov-
ery, and this case must also be decided by its own surround-
ings and circumstances. The cases we have cited are,
however, in our opinion, so apt in illustration and applica-
bility to the case presented, that they afford a sufficient and
safe guide to the decision of the facts in this case. No one,
we think, can examine the evidence in this case, as we have
done, without reaching the conviction that the deceased was
familiar with all the surroundings of the crossing; that he
knew, or by the exercise of slight observation, such as the
common faculties incident to every person in the use thereof
would disclose, he would have known of the approaching
train, and the danger then imminent in the act of crossing.
In truth, the evidence of one witness, Worden, who had
heard the whistle of the train, and so far as we can discover
his testimony is undisputed, is that just before the deceased
started home he informed him the fast train was coming,
and warned him not to try to make the crossing ahead of
it; to which the deceased responded "all right," and drove
down to the crossing; and there, notwithstanding all the
information he actually had, and all that he might have had
by the exercise of even slight care by attention to the exist-
ing conditions, he heedlessly, or thoughtlessly, drove his
horses across the path of the approaching engine and thus
met his death without fault on the part of appellant; and
for such reasons the trial court ought to have directed a
verdict for the defendant and for its error in refusing to do
so the judgment of the Circuit Court is reversed; and this
being our conclusion the necessity to consider the other
assigned errors is superseded. Judgment reversed.

**Finding of facts** to be recited in the final order of the
court :

And the court finds from the evidence in the case as the

ultimate facts that the appellant is not guilty of the negligence charged in the declaration, or in either count thereof; and that the said William Monegan came to his death by his want of ordinary care in failing to ascertain the approach of the train that killed him; and that his failure to ascertain the approach of such train and avoid being injured thereby was his negligent lack of being warned by surrounding conditions, and not heeding actual notice of its approach such as would have induced an ordinary person in the use of his common faculties to await the passing of such train, before attempting to cross the railroad track at Fourth street in Morrisonville, at the time he, the said William Monegan, was killed.