# CASES

# APPELLATE COURTS OF ILLINOIS.

THIRD DISTRICT—NOVEMBER TERM, 1901.

## Illinois Central Railroad Company v. Harry Finfrock, by His Next Friend, etc.

1. CONTRIBUTORY NEGLIGENCE—*Justifying Instruction to Find for the Defendant.*—Where a person possessed of all his faculties, familiar with a crossing and its surroundings, and knowing that a train was due to pass there about that time, drives toward the crossing in a good trot, with the side curtains on the buggy, and does not stop the team or slacken its speed to enable him to see and hear the train, but without taking any precautions whatever to ascertain whether a locomotive was approaching, drives onto the tracks and collides with a locomotive, it is error to refuse an instruction directing the jury to find a verdict for the defendant.

2. SAME—*When a Question for the Court.*—While what is or is not negligence is always a question of fact, and questions of fact are usually left to be determined by the jury, yet where all reasonable minds would be compelled to conclude that a person has encountered danger with concurrent injury under circumstances and surroundings showing that in so doing he acted rashly, recklessly or unreasonably, then it is the duty of the court to hold that he is precluded from recovering for such injury, without submitting the case to the jury.

3. RAILROADS—*Duty to Look and Listen.*—The omission of the duty to look and listen before crossing a railroad will be excused where it appears that the party is misled without his fault, or where the surroundings may excuse such failure.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of DeWitt County; the Hon. WILLIAM G. COCHRAN, Judge presiding. Heard in this court at the November term, 1901. Reversed. Opinion filed June 20, 1902.

WARNER & LEMON, attorneys for appellant; J. M. DICK-INSON and JOHN G. DRENNAN, of counsel.

WELTY & STERLING, for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This was an action on the case in which the appellee, Harry Finfrock, a boy sixteen years old, by his next friend, sued the Illinois Central Railroad Company to recover damages for personal injuries received by him, and which he alleged were caused by the negligence of the railroad company.

The case was tried by jury on the issues made by the second and fourth counts of the declaration and the plea of not guilty, and resulted in a verdict and judgment in favor of appellee for $6,000 damages.

Appellant moved for a new trial, which being denied, it excepted, brings the case to this court by appeal, and to effect a reversal argues that the court erred in refusing to direct a verdict for it at the close of the evidence, and in refusing to grant a new trial.

It is averred in both the second and fourth counts of the declaration that appellee received the injuries complained of on the 16th of July, 1900, in a collision between the buggy drawn by a team of horses that he was driving from the westward toward the eastward along and over a public street-crossing in the village of Wapella, in DeWitt county, Illinois, and a passing locomotive engine of appellant that approached and passed over the crossing from the north, going toward the south; that the collision was occasioned and the injuries inflicted by reason of the negligence of appellant, and that appellee, at the time, drove along the street and onto the crossing with all due care and diligence for his own safety.

The negligence charged in the second count was the failure to give the statutory signals while the locomotive approached and passed over the crossing; and in the fourth, that appellee permitted a house and other buildings, and

some growing trees, to remain upon its right of way on the west side of the tracks, and the north side of the street, which so obstructed the view of appellee while approaching from the westward that he could not observe the locomotive and train on the railroad as it came from the north; and that the locomotive which caused the collision was, at the time, running "at a great, immoderate and dangerous speed."

The village of Wapella contains about 450 inhabitants, and appellant's railroad runs north and south through it, crossing Elm street at grade. Elm street runs east and west through the north part of the village, and the only obstructions to the view from Elm street north on the west side of the railroad consists of the section house, which is one story high, sixteen feet square and situated 100 feet north of Elm street and 140 feet west of the track. A little northwest of the section house is a shed stable thirty feet long, eight feet high in front and six feet in the rear. East of the section house is a small coal shed. There are seven maple trees in the vicinity of the section house, which are about thirty feet tall, with limbs branching out about eight feet from the ground. The section house, sheds and trees are inclosed with a fence.

The home of appellee is seven miles west of Wapella, which is four miles north of the city of Clinton. In going from appellee's home to Clinton the public road leads through Wapella, along Elm street, across appellant's railroad. On the morning of July 16, 1900, appellee and his sister left their home in a top buggy, drawn by two horses, driven by appellee, intending to go to Clinton to attend the County Teachers' Institute, which met there that day. When they had gotten to within about two miles of Wapella, seeing a rainstorm was about to overtake them, they put the side curtains on the buggy and drove on in a good trot, and by the time they approached the Elm street crossing, about eight o'clock, it was raining hard. Upon arriving at the crossing they did not stop the team or slacken its speed to enable them to see or hear the train, but kept on in a good trot, and without taking any pre-

cautions whatever to ascertain whether a locomotive was approaching, drove onto the tracks and collided with the south-bound locomotive drawing the fast passenger train of appellant from the north, killing the sister and severely injuring appellee.

Appellee was, at the time, possessed of all his faculties, familiar with the crossing and its surroundings, and knew that the train which struck him was due to pass there about that time.

The locomotive was running about twenty-five or thirty miles an hour when the collision occurred, and there is no doubt but that the statutory signals were given, although some witnesses testify that they were where they could have heard them, but did not.

At the close of appellee's evidence, and again at the close of all the evidence, counsel for appellant presented to the court a written instruction directing the jury to find a verdict for appellant, which was refused and an exception taken.

The contention of counsel for appellant is that the evidence shows that appellee did not exercise reasonable care for his own safety in going onto the crossing without taking any precautions to ascertain that the locomotive and train of cars were approaching, and thereby avoiding colliding with the locomotive, and for that reason the court erred in not giving the peremptory instruction requested.

We are of opinion that there is much force in that view, for under such surroundings it seems to us that reasonable minds could not differ in the conclusion that a person in possession of all his faculties, in the exercise of ordinary care, would have naturally stopped, or at least slackened his speed, looked and listened, before driving onto the crossing. And while appellee was only sixteen years of age, yet the evidence is undisputed that he was fully capable of comprehending the situation, and simply suffered his desire to speedily reach his destination and get out of the rain, to cause him to neglect taking such reasonable precautions as would undoubtedly have prevented his colliding with the locomotive.

As we said in Wabash Railroad Company v. Monegan, 94 Ill. App. 82 (p. 86):

"It has been frequently held by courts of last resort, not as a matter of law, but in passing upon the ultimate facts, that to cross a railroad under similar circumstances as disclosed in this case, constituted such contributory negligence as to preclude a recovery."

And in the Monegan case, *supra*, we quoted from several Illinois cases to show that it is the established rule in this state that "it is deemed culpable negligence to cross the track of a railroad without looking in every direction that the rails run, to make sure that the road is clear." And that "if a party rushes into danger which by ordinary care he could have seen and avoided, no rule of law or justice can be invoked to compensate him for any injury he may receive."

We know that what is or is not negligence is always a question of fact, and that questions of fact are usually left to be determined by the jury, yet where all reasonable minds would be compelled to conclude that a person has encountered danger with concurrent injury under circumstances and surroundings showing that in so doing he acted rashly, recklessly or unreasonably, that it is the duty of the court to hold that he is precluded from recovering for such injury, without submitting the case to the jury.

It is a rule of law, also, that the omission of the duty to look and listen before crossing a railroad will be excused where it appears that the party is misled without his fault, or where the surroundings may excuse such failure. Chicago & Alton Railroad v. Pearson, 184 Ill. 386, and same v. Lewandowski, 190 Ill. 301.

But in the case at bar, it conclusively appears that appellee knew the train which struck him was due to pass at the time; knew what the surroundings which tended to prevent him from seeing or hearing the train were; and simply went upon the crossing without using any precautions to avoid a collision.

The speed of the train at the time, was not, we think, so great as to be evidence of recklessness on the part of

appellant, nor is it so claimed in the declaration; hence the question of such recklessness on the part of the servants in charge of the train as would excuse appellee from using ordinary care to avoid a collision, was not presented.

It follows from what we have said, that the trial court erred in not directing a verdict for appellant, and for that error we will reverse the judgment without remanding the case.

**Finding of Facts** to be incorporated in the judgment :

The court finds from the evidence that appellee was not in the exercise of ordinary care when he received the injuries for which he claims damages; and that appellant was not guilty of the negligence charged in the declaration.