## Simon T. Sutton, Administrator, Appellee, v. The Aurora, Elgin & Chicago Railway Company, Appellant.

## Gen. No. 15,968.

CONTRIBUTORY NEGLIGENCE—*when attempting to cross railroad tracks
constitutes.* Held, under the evidence, that the plaintiff's intestate,
in attempting to cross the railroad tracks upon which he was killed, was
guilty of such contributory negligence as to bar a recovery.

Action in case for death caused by alleged wrongful act. Appeal
from the Circuit Court of Cook county; the HON. JOHN GIBBONS, Judge,
presiding. Heard in the Branch Appellate Court at the October
term, 1909. Reversed with finding of fact. Opinion filed November
28, 1911. Rehearing denied December 12, 1911.

HOPKINS, PEFFERS & HOPKINS, for appellant.

JOHN C. KING and JAMES D. POWER, for appellee.

MR. JUSTICE SMITH delivered the opinion of the
court.

Joseph McFall was killed on the 6th day of January,
1908, by being struck by an eastbound express car of
appellant, at the intersection of its tracks with Seven-
teenth avenue in the village of Maywood. On the
morning of the accident, deceased and his son Joseph
examined one of appellant's time-tables, left their home
in Maywood, walked to Madison street, and then west
on Madison street to Seventeenth avenue. When they
reached Seventeenth avenue they had a full view of
appellant's tracks for a mile to the west; and that view
was practically unobstructed as they proceeded south

on Seventeenth avenue to appellant's passenger plat-
form. There was no other train than the one in ques-
tion anywhere in the vicinity to confuse or distract the
attention of deceased or his son. When they ar-
rived at Seventeenth avenue they saw the train com-
ing rapidly from the west, and started to run towards
the station, a distance of about six hundred feet. The
son said something to the deceased about the approach-
ing train to the effect that it was running at the rate of
fifty miles an hour, and as they ran toward the cross-
ing of the right of way of appellant and Seventeenth
avenue, the deceased was from six to ten feet behind the
son. They ran rapidly in an effort to get across the
eastbound track to the passenger platform to take the
train. As they got near to the track, the son fearing
that they would not catch the train ran ahead some-
what, and when the car was approaching at a high rate
of speed, and only about two or three hundred feet
away, the son dashed across the track in front of it to
the platform. Seeing the imminent danger of his fath-
er he turned around and motioned to the deceased
to stay where he was. When the old gentleman got
near the north or westbound track of appellant, which
runs just north of the eastbound track on which the car
was approaching, he stopped, hesitated for a moment,
almost turned around, and then took hold of his hat,
looked at the train, and again started to cross the track.
He was unable to cross, and the train struck him. Dur-
ing the time that the deceased was approaching the
track and while he stopped or hesitated, and almost
turned around, the motorman of the train was con-
tinuously blowing his whistle.

The son testified that they did not know what train
it was which was approaching, except that it was a
train bound for Chicago. He testified that the accident
happened at a quarter to ten o'clock, which was fully
seven minutes before the local train would stop at
Seventeenth avenue. Other witnesses placed the time

at 9:40, twelve minutes or more before the local train was due.

Madison street, which parallels appellant's tracks at the place of the accident, runs on west of Seventeenth avenue for about 1200 feet, and then turns to the south at right angles across appellant's tracks, and then proceeds westerly, parallel with appellant's tracks on the south side thereof. As the motorman approached the Madison street crossing, west of Seventeenth avenue, he was running his car, which weighed 45 tons and which was equipped with a whistle similar to a railroad whistle, at about 50 miles per hour. His car was on time. It was due to cross Seventeenth avenue at about 9:40 or 9:41, and the accident happened at just about that time. The motorman whistled for the Madison street crossing about 1200 feet away, and after crossing Madison street about 400 or 500 feet, he gave a crosssing whistle for Seventeenth avenue, consisting of two long and two short blasts. He saw deceased and his son approaching the crossing on a run, and after giving the crossing whistle and when about 300 feet west of Seventeenth avenue he commenced blowing a succession of six or seven sharp blasts or danger whistles. Deceased was then just about the north rail of the westbound track or about a rod north of the eastbound track on which the car was running. Deceased then stopped at this point, or hesitated for a moment, and then apparently thinking he could beat the car at the crossing, looked at his son, who was on the platform apparently motioning him to stay where he was, took hold of his hat and started to run across in front of the train.

When the deceased stopped north of the westbound track, the motorman, who had applied his brakes and brought his car down to 40 miles an hour 200 feet west of Seventeenth avenue, thinking that the deceased would stay in a place of safety after stopping, released his air in order to go forward in the usual way over

the crossing. As the deceased started again the motor-man shut off his power, threw his emergency air-brake on, but in the short distance of four or five car lengths that remained between the car and the crossing, after the deceased started forward, it was impossible to stop the car in time to avoid the accident.

On the trial of the case appellant moved the court, at the close of the plaintiff's evidence, and again at the close of all the evidence, to direct a verdict in favor of appellant. These motions were overruled by the court and exceptions were taken by appellant. The jury returned a verdict in favor of appellee, and judgment was entered on the verdict.

The errors relied upon by appellant for reversal of the judgment are that the court erred in refusing to instruct the jury to find the appellant not guilty, and other errors relating to rulings on instructions, which, in our view of the case, it is unnecessary for us to state or discuss.

The record and assignments of error raise the principal question in the case as to the liability of appellant for the death of the deceased; that is to say, as to whether the conduct of the deceased, at and prior to the accident, constituted such gross contributory negligence and such a lack of ordinary care for his own safety as prevents a recovery in this case by the plaintiff.

It is urged on behalf of appellee that the deceased was completely exonerated from any imputation of contributory negligence because, in approaching and crossing the track in front of the car he acted under the belief that the car instead of being an express was a local car, and was coming to a stop at the station. It is urged that in reaching this conclusion, although it was a mistaken one, he was guilty of no negligence, but on the contrary acted as a reasonably prudent man would act under the circumstances.

Sutton v. The A., E. & Chi. R'y Co., 166 Ill. App. 299.

We are unable, upon an examination of the evidence, to assent to this contention on the part of appellee. In our opinion the evidence in the case shows that the deceased and his son had unobstructed view of the track from the time they reached Seventeenth avenue, some 500 or 600 feet north of the crossing in question, until they reached the right of way of appellant. There was nothing to interrupt their view of the approaching train during the time they were covering this distance along Seventeenth avenue. They saw the train approaching at a high rate of speed, and they were endeavoring to cross the track in front of it. It was an effort on the part of the deceased and his son to reach the crossing before the train arrived at the platform of the station, and in order to do so they realized that they would be compelled to run rapidly. The evidence is that they ran as fast as they could, and that the young man was able on account of his superior running ability to reach the crossing and pass over it in safety. The deceased was a short distance behind his son when the son passed over the tracks, and was warned by the blowing of the whistle, the knowledge that the train was approaching rapidly, and by the motion of his son's hands, which he apparently saw, to stay where he was and not attempt to cross the track. Apparently the deceased gave heed to these warnings and stopped and partly turned around, according to the testimony of some of the witnesses, and then made up his mind to take the risk of attempting to cross the tracks before the rapidly approaching train.

There is no dispute as to any of the substantial facts of the case, and particularly as to the fact that the deceased stopped or hesitated just north of the westbound track in a place of safety, and then, in order to gain the platform before the car should pass, started again and ran directly in front of the train. The train was coming at a high rate of speed. There is no dispute that the motorman when he saw the deceased and his

son approaching the track on a run, gave warning whistles, and when about 300 feet west of the crossing he threw off the power, put on the air brake, and blew a succession of six or seven sharp blasts or danger whistles. When the motorman saw that the deceased stopped and hesitated in a place of safety he, apparently thinking that the deceased intended to remain where he was, threw off his brakes and put on his power again. Then when he saw the deceased start forward in an attempt to cross ahead of the car he used every effort to bring his train to a stop before it reached the crossing and was unable to do so.

The evidence we think fails to show any negligence on the part of the motorman. It does on the other hand show gross contributory negligence on the part of the deceased.

The case is very similar to C. & N. W. Ry. Co. v. Weeks, 198 Ill. 551. It cannot be distinguished from that case, and we think the principles there announced are to be applied here, and that the authorities cited in that case apply to this case.

In our opinion the principles to be applied in this case are clearly enunciated in L. S. & M. S. Ry. Co. v. Sunderland, Adm'r, 2 Ill. App. 307, and C. C. C. & St. L. Ry. Co. v. Arbaugh, 47 Ill. App. 360, is also in point and covers fully the questions here involved.

Many other cases in the reports of this state, bearing upon the question of contributory negligence at railroad crossings, might be cited; as for instance, I. C. R. R. Co. v. Batson, 81 Ill. App. 142, where the court said:

"A person has no right to blindly run into danger and then seek to recover damages for the resulting injury from another; and a person will not ordinarily be permitted to recover damages from a railroad company for injuries received at a crossing, where the view of the railroad tracks was unobstructed for a considerable distance and such person went in front of a train

without loooking, or listening, or ascertaining by any means whether it was safe to go upon the crossing.''

In Wabash R. R. Co. v. Monegan, 94 Ill. App. 82, the court said:

''It is the duty of persons about to cross a railroad to look about them and see if there is danger,—not to go recklessly upon the road, but to take the proper precautions themselves to avoid accidents at such places. If a party rushes into a danger which by ordinary care he could have seen and avoided, no rule of law or justice can be invoked to compensate him for any injury he may so receive. (C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; and see St. L. A. & T. H. R. R. Co. v. Manly, 58 Ill. 300).''

In Chicago Union Traction Co. v. Jacobson, 217 Ill. 404, 408, the court said:

''The law does not permit one to drive in the path of a moving car relying on those in charge of the car to stop and protect him from injury.''

See also Railroad Company v. Houston, 95 U. S. 702.

The facts in this case are much stronger against the right of recovery than the facts in some of the cases above quoted, the decisions in which are based upon negligence in failing to look or listen and to observe what was in plain view. In this case the deceased knew that the train was approaching rapidly and that it was only with the greatest effort that he could succeed in reaching the crossing before the train arrived. He took desperate chances and with the result that he lost his life. We are of the opinion that there is no possible ground of recovery, and that the court erred in refusing to instruct the jury at the close of the evidence in the case to find the appellant not guilty. This view of the evidence upon the main question of liability makes it unnecessary for us to discuss the other assignments of error.

The judgment is reversed with a finding of fact.

*Reversed with finding of fact.*