# THE CHICAGO, BURLINGTON AND QUINCY R. R. Co.

## *v.* .

# MARY J. LEE, Admx.

1. BILL OF EXCEPTIONS—*imports verity.* Where a cause is again tried after a reversal for the admission of improper testimony, and, by stipulation, the same evidence as on the first trial was to be used, saving all objections to its competency, and a part of the testimony decided to be improper appeared in the second record, it was suggested that such testimony was, in fact, excluded, but found its way into the record inadvertently: *Held,* that the record imported verity, and, showing the admission of improper testimony, it was cause for reversal.

2. NEGLIGENCE—*plaintiff can not recover for, if deceased was guilty of gross negligence.* It is an essential element to the right of action for injuries occasioned by negligence of the defendant, that the plaintiff or party injured must, himself, have exercised ordinary care, such as a reasonably prudent person will always adopt for the security of his person or property. Where a party has been injured for the want of ordinary care on his part, which is gross negligence, the cases all hold that no action will lie, unless the injury is wilfully inflicted by the defendant.

3. SAME—*no degrees of gross negligence.* There are, and can be, no degrees of gross negligence in law, and therefore, it is error to so qualify an instruction as to leave the jury to understand that the plaintiff may recover notwithstanding his want of ordinary care, if the negligence of the defendant was greater than that of the plaintiff, or of the deceased where the suit is to recover damages for causing his death by negligence.

4. SAME—*doctrine of comparative negligence.* Formerly it was held that if the negligence of the plaintiff contributed to the injury, however slight, no recovery could be had, but it is now the settled law that the plaintiff may recover, notwithstanding he may have been guilty of contributory negligence, if his negligence is slight and that of the defendant is gross. If the plaintiff is alone guilty of negligence, or the negligence of the parties is equal, or the plaintiff's negligence is gross, no action will lie, unless the injury is wilfully inflicted.

5. SAME—*duty of engineer on seeing a team approach a crossing.* The law has not made it the duty of a railroad company to check up its trains on discovering a person approaching a crossing, from the highway, with a team. The law requires the giving of the statutory signals or warning, and it is the duty of persons traveling on the highway to wait until the train has passed, and the engine-driver seeing a person so approaching has a right to expect he will stop, according to the known custom, until the train passes.

6. SAME—*rate of speed as bearing on question.* The general law of the State imposes no restraint upon railway companies as to the rate of speed its trains may be run. Where not prohibited by municipal regulations, they may adopt such rate of speed as they may desire, provided always, it is reasonably safe to the passengers being transported.

7. SAME—*omission to give statutory warning at crossing.* The omission of a railroad company to ring a bell or sound a whistle, as a train approaches a public crossing, will not, *per se*, render it liable. To make it liable, it must be a just inference, from the evidence, that the injury was caused by reason of such neglect.

8. SAME—*how shown that injury resulted from neglect.* Where it is proven that a party injured by a collision at a railroad crossing of a highway, was in the exercise of due care and caution, it may be a reasonable inference that the accident was produced by reason of such neglect to ring a bell or sound a whistle. It may be made to appear by circumstantial, as well as direct, evidence.

9. In a suit by the personal representative of a person killed upon a railroad crossing, against a railway, to recover damages for the killing, on the alleged ground of negligence of the company, it appeared that the country was level at the place of the accident, and that the deceased could readily have seen the approaching train, by the use of ordinary care and caution, but drove upon the crossing without looking for a train, and there was no proof that he was seen by the company's servants until it was too late to check the speed of the train: *Held,* that a verdict in favor of the plaintiff and against the company, could not be sustained, owing to the gross negligence on the part of the deceased, even if a bell was not rung or a whistle sounded, as required by law.

578          C. B. & Q. R. R. Co. v. LEE, ADMX.     [Sept. T.

Opinion of the Court.

10. PLEADING AND EVIDENCE—*proof confined to cause of action alleged.* In an action against a railroad company to recover for an injury, when the only negligence charged is the neglect to ring a bell or sound a whistle at a public crossing, and a great rate of speed, proof of the erection of a granary and suffering the brush to grow up on right of way, so as to obstruct the view of the approaching train, as contributing to the injury, can not be considered.

11. INSTRUCTION—*must be supported by the evidence.* Although an instruction may state a correct principle of law, yet if it is not applicable to the facts, it may tend to mislead the jury, and ought to be refused.

APPEAL from the Circuit Court of Henderson county; the Hon. ARTHUR A. SMITH, Judge, presiding.

This was an action on the case, brought by Mary J. Lee, administratrix of the estate of Darius B. Lee, deceased, against the Chicago, Burlington and Quincy Railroad Company, to recover damages for causing the death of her intestate, through negligence. A trial was had at the special November term, 1872, resulting in a verdict and judgment of $5000 for the plaintiff. The opinion states the material facts of the case.

Messrs. MILLER & FROST, for the appellant.

Messrs. DOUGLAS & HARVEY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This cause was before us on a former appeal, and the judgment was then reversed for two reasons: First, the court admitted improper testimony, and second, the negligence of the deceased was fairly presented by the evidence, but it was thought the law as to the comparative negligence of the parties was not properly stated in the instructions given.

A second trial was had, by stipulation, on the same evidence taken on the previous trial, saving all objections to the competency of the testimony. A part of the testimony decided to be improper, again appears in this record. Enough was said in the former opinion to indicate what testimony should be excluded, and it is not necessary to repeat the views there

.expressed.    It is suggested the testimony declared to be incompetent was in fact excluded, but is inadvertently found in this record.    We can not know whether this is so or not. The record imports verity.    It is error that the objectionable testimony appears in it, for which the judgment would have to be reversed if no other cause existed.

The errors assigned which most materially affect the decision of the case are:

*First,* The court erred in giving and modifying instructions.

*Second,* The verdict is contrary to the law and the evidence.

It will not be necessary to consider all the objections taken to the several instructions.    Our observations upon a few of them will serve to indicate our views of the law that must govern the ultimate decision of the case.

The 18th instruction asked by appellant, states a correct principle of law, and ought to have been given without qualification.    The substance is, if the deceased, in approaching the railroad crossing, failed to exercise that care for his personal safety which an ordinarily prudent man would do, and if by the exercise of such care he could have discovered the approaching train in time to stop his team, so as to have avoided the collision, then the law is, the appellee could not recover.    The court modified the doctrine stated in the text of the instruction by adding the words to the first division, "unless the negligence of the defendant was greater than plaintiff's."

This modification was unwarranted by the law, as announced in the previous opinion in this case, and in numerous decisions of this court.    The law in regard to the comparative negligence of the parties has been so repeatedly explained, it would now be a work of supererogation to restate it.

It never has been held to be the law that the plaintiff could recover simply because the defendant was guilty of greater negligence in that which produced the injury.    The adjudged cases all declare the reasonable doctrine, if the plaintiff was

580 · C. B. & Q. R. R. Co. *v.* LEE, ADMX. [Sept. T.

Opinion of the Court.

alone guilty of negligence, or if the negligence of the parties was equal, there could be no recovery. Formerly it was the rule, if the negligence of the plaintiff contributed to the injury, however slight, it would bar an action. This rule has been modified by more recent decisions, and it is now the settled law the plaintiff may recover notwithstanding he may have been guilty of contributory negligence, if his negligence is slight and that of the defendant is gross. It is an essential element to the right of action in all cases, the plaintiff or party injured must himself exercise ordinary care, such as a reasonably prudent person will always adopt for the security of his person or property.

There are, and can be, no degrees of gross negligence. The cases all go to the length of holding, where a party has been injured for the want of ordinary care, no action will lie, unless the injury is wilfully inflicted by the defendant. The words added to the instruction plainly informed the jury, plaintiff cound recover notwithstanding deceased had been guilty of a want of ordinary care for his safety, or even if guilty of gross negligence, if defendant was guilty of greater negligence. On the authority of previous decisions this was error. *C. B. and Q. R. R.* v. *Lee,* 60 Ill. 501 ; *C. and A. R. R. Co.* v. *Gretzner,* 46 Ill. 75; *C. B. and Q. R. R. Co.* v. *Van Patten,* 64 Ill. 510, and case cited.

The third and tenth instructions of the series given for appellee are liable to the same objections, and will be considered together. It is asserted, as a ground of liability, if the engine-driver saw the team and wagon passing over the Gale crossing in time to have checked or stopped the train before the collision occurred, it was his duty to do so. If it was only intended to declare it was the duty of the engine-driver, when he saw the deceased on the track, to use every possible means in his power to prevent a collision, the charges were undoubtedly correct; but in that view they could have no application whatever to the facts of the case, and for that reason, if for no other, ought to have been refused. The tendency was,

to direct the attention of the jury to an element of liability not found in the evidence. The train was moving at a high rate of speed down a descending grade, and there is not the slightest evidence the engine-driver saw the team and wagon on the track until he was within a few rods of the crossing. Then it was impracticable to stop the train in time to avoid the accident. The proof is, a train moving at the rate of thirty miles an hour can not be stopped short of a distance of from sixty to seventy rods, on a level road, by the use of good brakes. Although an instruction may state a correct principle of law, yet if it is not applicable to the facts it may tend to mislead the jury, and ought to be refused. *Bailey* v. *Godfrey et al.* 54 Ill. 507.

The conclusions, however, are susceptible of a different construction, and it may be the jury understood them in a still more objectionable sense. If it was intended to assert it was the duty of the engine-driver, when he saw Lee with his team approaching the crossing, to apply the brakes and stop the train, to allow him time to pass over, then, on the authority of the *St. L., A. and T. H. R. R. Co. Manly,* 58 Ill. 300, the doctrine announced was not the law. We think the instructions may have made that impression on the mind. They can illustrate no phase of the case if that is not their meaning.

The law has not made it the duty of a railroad company to check up its trains on discovering persons approaching a crossing from the highway. Such a regulation would be unreasonable. The obligation is imperative to sound the signals of danger, and it is incumbent on all persons traveling on the highway to wait until the train has passed. Even if the engine-driver saw Lee driving in the direction of the public crossing—the testimony, however, affords no grounds for such a belief—he had a right to expect, according to the known custom, he would stop, rather than attempt to pass in front of the train, that all the witnesses say was running at a high

rate of speed. This point was expressly ruled in Manly's case; *supra*, and is conclusive of this view of the law.

We recur to the second principal error assigned, viz: the verdict is against the law and the evidence.

It was thought our former opinion would indicate we were not satisfied with the conclusion reached by the jury. The present verdict was found upon the same evidence, and, after the most patient and careful consideration of the whole testimony, we do not see how the judgment can be maintained.

The only negligence charged in the declaration upon which the right of action is predicated, consists in the averments the train was run at an unusual rate of speed, and that the servants of the company omitted to cause the bell to be rung or the whistle to be sounded for the requisite distance before reaching the crossing.

There is nothing in the charter of the company, nor in the general laws of the State, which imposes any restraint as to the rate of speed its trains may be run. When not prohibited by municipal regulations, it is apprehended, the company may adopt such rate of speed as it shall deem advisable, provided, always, it is reasonably safe to the passengers being transported. It will be subject to no liability for the rate adopted, if the company is not otherwise at fault. But it is not necessary to discuss this branch of the case further, for the reason it is not proven the train was being run at an unusual speed for the open country, as this was. Had the train been running much slower, there is no reason for the belief the accident would not have happened just as it did.

The only negligence with which it is possible, under the evidence, to charge the company, is the omission of its servants to ring the bell or sound the whistle.

There is the testimony of a number of witnesses who were in the immediate vicinity, who state they did not hear either the bell or whistle until the instant the collision occurred, when the signal was given, by sounding the whistle, for putting on the brakes. Some of them say they do not know

whether the signals were, in fact, given, their attention being otherwise occupied ; others assert, with great positiveness, no signals were given ; but the record contains the affirmative testimony of the engine-driver, the fireman, and of two other witnesses, that the bell was rung for the usual distance before reaching the crossing.

It is possible for the first named witnesses to be mistaken. They were expecting no casualty to happen, and were doubtless engaged about their usual avocations. The bell may have been rung and yet made no such distinct impression on the mind as would be remembered. There is no such excuse for the other witnesses. The bell must have been rung, or else they are all guilty of willful, deliberate and corrupt perjury. We are unwilling to impute such crime to witnesses, where no motive can be assigned for such corrupt conduct. There is no warrant in the evidence or circumstances proven for such an imputation.

This cause may be defended on other grounds. It may be admitted the bell was not rung, and yet this omission of duty would not, of itself, fix a liability on the company. It was said in *The Chicago and Rock Island Railroad Co.* v. *McKean,* 40 Ill. 218, the mere omission to ring a bell or sound a whistle will not, *per se,* render the company liable. It must be a just inference, from the evidence, the injury was caused by "reason of such neglect." This is the extent of the statutory liability, and we are not at liberty to enlarge its provisions by judicial construction. Where it is proven the party injured was in the exercise of due care and caution, it may be a reasonable inference the accident was produced by "reason of such neglect" to ring a bell or sound a whistle. It may be made to appear by circumstantial as well as direct evidence.

No facts or circumstances appear in this record that warrant the belief, Lee, when nearing the fatal crossing, observed such precautions as ordinarily prudent men do for their personal safety. It is difficult to attribute this lamentable accident to any other cause, consistently with the evidence, than

to thoughtless conduct in attempting to pass a dangerous way, with which he was perfectly familiar, without observing the usual precautions. This will appear more manifest on a recurrence to the principal facts.

The road on which Lee was driving his team ran east and west. The company's railroad ran in the same general direction, but not exactly parallel, and crossed the wagon road obliquely. He came from the west and was going east. The train that collided with the wagon came from the same direction, and was eastward bound. The wagon was loaded with wood. Ryan, a witness for appellee, met the deceased a short distance west of the crossing. He says he was then walking by the side of the wagon, on the side to the north, driving the team. The witness Copping, whose testimony, however, is very much discredited, states he saw him going towards the crossing riding on the load, with his feet hanging down on the north side. These are the only witnesses that pretend to have seen the deceased immediately before the collision. If he occupied the position described by either witness, it was certainly very unfavorable for discovering the approach of a train from the west. It came in the rear, from the same direction he had come. If he was in the position described by Ryan, the load on the wagon would obstruct the view, but if upon the load, as Copping located him, it would be but little better, for his face would be turned in the opposite direction from the approaching train.

The witness Ryan says, that in two minutes after he passed the deceased he saw the smoke and steam from the engine rising over Mecum's orchard, to the west. There is no reason why the deceased could not have seen the same thing, had he been on the lookout. In all probability he was still walking by the wagon on the north side, as Ryan saw him. If so, the view was almost entirely cut off by the load on the wagon.

The witness Lee, a brother of the deceased, and certainly a very candid witness, describes the views that could be

obtained of the train by a person coming from the west, on the road his brother had traveled. He says : "One rod west of the track could see forty or fifty rods; at the end of two rods I could see thirty or forty rods ; after one had got to the end of two rods obstructions came, and continued four rods ; at the end of four or six rods from the track I could see along the railroad to Mecum's crossing." The latter crossing is some considerable distance west of Gale's crossing, where this accident occurred. Other witnesses for appellee give, substantially, the same account of the views that could be obtained.

The deceased must have known he was approaching a railroad crossing. The law made it his duty, whether he heard the signals or not, to look in either direction for coming trains. Had he done this, there was nothing to prevent him from seeing the train in time to stop his team.

Stress is laid on the fact, the company had permitted a granary to stand near the track, and suffered some brush to grow up on the right of way, which, in a measure, obstructed the view to the west. It would be a sufficient answer to the suggestion to say, it is not averred in the declaration these obstructions contributed to produce the injury ; but if it had been, it could not change the decision. Independently of the obstructions to the view caused by the granary and the brush, there was abundant opportunity afforded any one, intent on observing, to discover the approach of cars.

It is as much the duty of a person about to pass a railroad crossing to look for as it is to listen for signals of danger. Under many circumstances the former is the only sure means of personal safety. In the case at bar, had the bell been rung continuously for the usual distance, it is hardly probable the deceased would have heard it. A moderate wind prevailed from the east, which drove the sound away from him. The ground was frozen, and walking by the side of the loaded wagon it is not reasonable to suppose he could have heard a bell, had one been rung. He ought to have looked for the

cars, and by looking to the west he could have certainly seen the indications that Ryan saw of the train at Mecum's orchard. The conclusion is irresistible, he must have drove upon the track without thought he was coming upon a railroad crossing or of the danger he was liable to encounter.

It can not be insisted, with any show of reason, the collision was wantonly and willfully produced by the employees of the company. No motive can be assigned for such conduct. It is only charged, the death of appellee's intestate was produced by the negligent conduct of the servants of the company.

The cases of *The St. L., A. and T. H. R. R.* v. *Manly*, and *C., B. and Q. R. R.* v. *Van Patten*, are so nearly like the case at bar in their facts, as to be authorities exactly in point. They elucidate, in some degree, every phase of the case.

If it shall appear on another trial, if one shall be had, the deceased failed to observe all reasonable precautions before driving upon the railroad track, such as a prudent man always adopts for his personal safety, that negligence on his part will bar a recovery, by his legal representative, for the benefit of the widow and next of kin.

The judgment is reversed and the cause remanded.

*Judgment reversed.*