## Wabash Railroad Co. v. George E. Stewart, Adm'r.

1. INSTRUCTIONS—*As to Speed of Trains Being Dangerous.*—An instruction which submits to the jury the simple question of whether the speed of a train was so high and dangerous as to amount to negligence on the part of the company, and wholly omitting to submit to them other attending circumstances shown by the evidence which might have affected the safety of persons using a highway crossing and which were necessary to be considered in properly determining the matter, is erroneous as giving them an unbridled and unguided license to find any speed they might regard dangerous, to be negligence.

2. SAME—*Must Be Based upon the Evidence.*—An instruction which, after telling the jury what signals the laws' of the State require railroads to give before reaching and while passing over public highways, states that "it is a question for you to determine from the evidence whether the law was complied with by the company, and whether the deceased was or was not in a condition to have heard such signals if they had been given," is erroneous, as submitting a question not in issue by the pleadings and proofs, and calculated to mislead the jury as to what the laws require of railroad companies in regard to signals at public highway crossings for the benefit of persons using the same.

3. SAME—*Calling Attention to a Single Omission of Duty.*—An instruction which calls attention to a single omission of the defendant, and submits to the jury for their determination, without reference to any other surroundings or attendant circumstances, the question as to whether or not that omission constituted negligence, is erroneous as prejudicial to the contention of the company, that the facts and circumstances shown by the evidence did not require it to have a watchman at the place at the time.

Action in Case.—Death from negligent act. Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the November term, 1899. Reversed and remanded. Opinion filed November 27, 1900.

Statement.—In the Circuit Court of Vermilion County, in an action on the case, the appellee, George E. Stewart, as administrator of the estate of Theodore T. Wade, deceased, sued the appellant for negligently causing the death of his intestate. The case was tried by jury and a verdict and judgment rendered for appellee for $2,750. Appellant brings the case to this court, and urges a reversal of the judgment on the grounds that the verdict is contrary to the evidence; that the court improperly gave plaintiff's instructions numbers two and three, and improperly refused defendant's refused instruction number eight.

The declaration contained seven counts. The first averred that on January 1, 1899, defendant was operating a certain railway which crossed a public street or highway within the corporate limits of the village of Philo, Champaign county, Illinois, directly west of a certain grain elevator standing alongside the tracks and on the right of way of defendant; that defendant drove a certain locomotive engine and train of passenger cars called the "Continental

Limited," upon and over said railway and crossing, and failed to give the statutory signals, in consequence of which Theodore T. Wade, while going over said crossing in a buggy, and in the exercise of due care, was killed; and that Wade left surviving him, his mother, one sister and two brothers as next of kin.

The second is like the first except it charges the locomotive and train of cars which defendant drove over said crossing, was the one known as the " Fast Mail."

The third averred that the defendant drove a train of cars known as the " Continental Limited "along said railway from east to west over said crossing, and while Wade, in the exercise of due care, was riding in a buggy on said highway, over said crossing, defendant so carelessly, negligently and improperly ran said train at such a high and dangerous rate of speed that said Wade was struck and killed thereby.

The fourth is like the third except it charges that train to have been the one known as the " Fast Mail."

The fifth averred that defendant, by its servants, drove a certain locomotive engine and train of cars over and along said crossing so carelessly and improperly while Wade, in the exercise of due care, was driving in a buggy over the same, that it struck and killed him.

The sixth averred that defendant negligently suffered and permitted a certain grain elevator of immense size to stand on its right of way alongside the tracks of its railroad on the south side thereof, and close to said street or highway, so that the view of defendant's track to the east, was obstructed to a person traveling on said street on the south side of said tracks; that by reason of defendant's negligently permitting said elevator to so obstruct the view of persons traveling north on said street, said locomotive struck the buggy of said Wade, whereby he was thrown out and killed.

The seventh charges that defendant permitted an elevator of immense size to stand on its right of way so that it was an obstruction to the view of its tracks to the east of

said street, making said crossing dangerous for persons traveling on said street when coming on the crossing from the south; that defendant was running and operating a regular train over said railroad, which train was a fast passenger train know as the "Continental Limited," and regularly passed through said village and over said crossing at a high and dangerous rate of speed, and defendant, well knowing the dangerous character of said crossing, had undertaken, and did on other days, station a flagman at said crossing, before the approach of said train, so as to warn persons desiring to cross of danger; but at the time aforesaid, defendant wholly neglected its duty in that behalf, and failed to have the flagman at the crossing to warn persons desiring to cross; yet, nevertheless, the defendant then drove its said train over said crossing from east to west, at a high and dangerous rate of speed, when said Wade was driving in a buggy from north to south over the same, in the exercise of due care, and was struck by said train and killed because of the neglect of defendant as aforesaid.

The defendant pleaded not guilty. The evidence shows that on Monday morning, January 2, 1899, the body of Wade was found lying about forty feet west of the crossing in question, between the main and side tracks, and was full of cuts and bruises. His horse lay dead some fifty feet further west, with a large cut upon his rump and others on its body, and his buggy, completely demolished, lay a little east of his body. There were no marks upon the ground indicating that deceased, his horse or buggy, had been dragged from the crossing to the places where they were found. On the afternoon of January 1, 1899, Wade, with his horse and buggy, took his sister from his home in Polo, to a farm house in the country south of the crossing in question. Leaving her there at 5:30 o'clock P. M., he started to his home in Polo, and from the distance and the route he had to go, should have reached this crossing about six o'clock, or a short time thereafter. The "Continental Limited" train of defendant, going west, passed through

Polo that evening at two minutes past six o'clock, being several hours late. "The Kansas City Express," sometimes called the "Fast Express" of the defendant, going west, that evening passed Polo at eighteen minutes past six o'clock, being on time. The "Fast Mail" of the defendant, going west, passed Polo that evening at fifty-nine minutes past eleven o'clock.

There was a large grain elevator on the right of way· of defendant, as described in the declaration, which obstructed the view of a person coming from the south on the highway in question, until he was within a very few feet of the main track on the crossing. The "Continental Limited" train was moving from fifty to sixty miles an hour when it passed over this crossing· that evening, and the "Kansas City Express" train was running from forty to fifty miles an hour. Several witnesses testified that they did not hear any bell ring or whistle blow on the engine of either of said trains when passing through Polo or before arriving there, although they were where they could have heard them if they had been rung or whistled. No person saw either train strike Wade, his horse or buggy. Two witnesses testified that they were near the crossing in question at nine o'clock that evening when a freight train passed, and by the reflection of the headlight of the engine, they saw an object lying about where the body of the horse was found. Another witness testified that his horse became frightened at something lying near the west of the crossing when he passed about half past ten o'clock that night, but he was not able to tell what it was. A number of witnesses testified that Wade was a careful man, while two witnesses testified that he sometimes drove rapidly over railroad tracks.

The agent of defendant at Polo was required by defendant to watch this crossing when the "Continental Limited" train went through, and flag persons wanting to cross when it was approaching, and he had been so doing for some time before January 1, 1899, but was off duty that afternoon, and did not watch or flag the crossing for that train on that evening.

The servants in charge of both the "Continental Limited" and the "Kansas City Express" train in question, all swear that the bells on the engine on both trains were rung continuously by an automatic air device on each as they passed through Polo, and for a long distance on each side thereof, and that the regular crossing whistles were given by both engines as each of the trains passed through Polo; and several witnesses, not servants of the defendant, testified that they heard the whistle as each train approached Polo. Both engines of said trains were examined at the end of their runs by their respective engineers, who testified that there were no marks upon either of them indicating that they had struck anything that evening and they also swear that their engines did not strike anything as they passed through Polo that evening. Engineer Sweeny, in charge of a train of defendant, received a message at Bement, Illinois, at 12:20 on the night of the accident, saying, " Look out for a horse between the pass track and the main track at Polo."

The crossing was shown to have been one of the most traveled roads or streets in Polo, but the number of inhabitants of that village was not shown, nor that there was any ordinance in force, regulating the speed of trains passing through there.

Plaintiff's given instructions which are complained of are as follows:

2. " The court instructs the jury that if you believe from the preponderance of the evidence that the defendant was guilty of negligence in running its train over the crossing in question at a high and dangerous rate of speed, as alleged in the declaration, and if you further believe from a like preponderance of the evidence that by reason of such negligence the deceased, while in the exercise of due care for his own safety, as alleged in the declaration, was struck by said train of the defendant and thereby killed, you should find a verdict for the plaintiff."

3. " The court instructs the jury that by the laws of this State every railroad company is required to have a bell and steam whistle placed and kept on each locomotive engine, and cause the same to be rung or whistled at the dis-

tance of at least eighty rods from the place where the railroad crosses or intersects any public highway, and to keep the same ringing or whistling until such highway is reached. It is a question for you to determine from the evidence whether the law as above stated was complied with by the defendant; and it is also for you to decide from the evidence whether Theodore T. Wade, the deceased, was or was not in such condition and so situated that he could have heard the bell or whistle if the former was rung or the latter sounded."

6. " The court instructs the jury that if you believe from a preponderance of the evidence that the defendant was guilty of negligence in not having a flagman stationed at the crossing in question, at the time the train known as the " Continental Limited" was approaching and crossing said crossing as alleged in the declaration, and if you further believe from a like preponderance of the evidence, that by reason of such negligence, the deceased, while in the exercise of due care for his own safety, as alleged in the declaration, was struck by said train of the defendant and thereby killed, you should find a verdict for the plaintiff."

And defendant's refused instruction, which it is claimed was error to refuse, is as follows:

8. " If the jury believe from the evidence that the elevator in controversy in this case was placed where it is for the convenience of trade and commerce, and was used at the time of the accident for the convenience of trade and commerce, then the court instructs the jury that the defendant is not guilty of negligence in this case for permitting the elevator in controversy to remain where it is."

GEORGE B. BURNETT, attorney for appellant.

CHAMBERS & FLYNN and JONES & PARTLOW, attorneys for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

As to the first insistence made by counsel for appellant, that the verdict was against the evidence, and the trial court erred in not setting it aside on that account, all we will say is that we express no opinion on that question because we feel compelled to reverse the judgment on

account of erroneous instructions given at the instance of the appellee, and will remand the case for another trial on that account.

Appellant insists that the court committed reversible error in giving plaintiff's instructions numbered two, three and six which are quoted in the statement preceding this opinion. By instruction number two the court told the jury if they believe from the evidence that the defendant was guilty of negligence in running its trains over the crossing at a high and dangerous rate of speed, as alleged in the declaration, and that by reason of such negligence the deceased, while in the exercise of due care, was struck by said train and thereby killed, then they should find a verdict for the plaintiff; thereby submitting to the jury the simple question of whether the speed of the train was so high and dangerous as to amount to negligence on the part of the defendant in so running its train, and wholly omitting to refer the jury to other attending circumstances shown by the evidence, which may have affected the safety of persons using the highway and crossing in question, and which were necessary to be considered by the jury in properly determining the matter, and thus giving unbridled and unguided license to the jury to find any speed they might regard dangerous to be negligence. This instruction was well calculated to prejudice the jury against the contention of defendant on the trial, that the speed of the train was not dangerous to persons using the highway in question, in view of all the facts, circumstances and surroundings appearing from the evidence, for which reason it ought not to have been given, and by giving it the court committed reversible error.

Plaintiff's instruction number three, after telling the jury what signals the laws of this State required every railroad to give before reaching, and while passing over, public highways, then proceeded as follows :

" It is a question for you to determine from the evidence whether the law as above stated was complied with by the defendant; and it is also for you to decide from the evi-

dence whether Theodore T. Wade, the deceased, was or was not in such condition that he could have heard the bell or whistle if the former was rung or the latter sounded."

This instruction submitted to the jury a question not in issue by the pleadings or proofs, for in neither does it appear that the plaintiff or defendant claimed or attempted to show that the condition or situation of the deceased was such that he could not hear signals if they were actually given, and therefore the court ought not to have submitted that question to be decided by the jury; besides, the instruction was well calculated to mislead the jury as to what the laws of this State require of railroad companies in regard to giving signals at public highway crossings for the benefit of persons using the same, and was well calculated to prejudice the defendant before the jury, and it was reversible error to give it.

Plaintiff's instruction number six, like his number three, singles out a single omission of the defendant, and submits to the jury for their determination, without reference to any other attendant circumstances or surroundings, whether or not that omission constituted negligence. While under certain circumstances the defendant ought to have had a watchman at the crossing in question when the "Continental Limited" approached and passed over it, yet to warrant the jury in finding that the defendant was negligent by reason alone of failing to have one there, depended upon circumstances and surroundings then existing, which the jury should have considered in arriving at a proper conclusion, and to which their attention should have been directed by the instruction but was not. Such omission was harmful to the contention of appellant that the facts and circumstances shown by the evidence did not require it to have a watchman there at the time.

Defendant's refused instruction number eight stated that the defendant was not guilty of negligence in permitting the elevator to be on its right of way, if it was there for the convenience of trade and commerce. The court properly refused it because neither in the declaration nor by the

evidence did plaintiff claim that the defendant was negligent for that reason alone. It was proper for the plaintiff to aver and prove that the elevator was so situated as to obstruct the view of defendant's trains to persons approaching the crossing on the highway from the south, as an attendant circumstance to show the negligence charged and attempted to be proved. The giving of that instruction as drawn, was calculated to confuse the jury, and would have prejudiced the rights of the plaintiff, for which reason it was properly refused.

For the errors indicated we reverse the judgment of the Circuit Court and remand the case for such further proceedings therein as to law and justice appertain.