## Max Warren, Appellee, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

1. COMMON CARRIERS—*when restriction of liability inoperative.* Limitations of a carrier's liability contained in a shipping contract are not binding upon the shipper unless his assent thereto is established by a preponderance of the evidence.

2. COMMON CARRIERS—*effect of violation of Interstate Commerce Act.* The fact that a contract between a shipper and a carrier violates the Interstate Commerce Act does not prevent or affect the shipper's right to recover for injuries or damages occasioned by the negligence of the carrier in the shipment.

3. EVIDENCE—*of what judicial notice not taken.* Judicial notice will not be taken of an official classification of freight rates made under the Interstate Commerce Act.

112     Appellate Courts of Illinois.

Warren v. Cleveland, C. C. & St. L. R. Co., 156 Ill. App. 111.

Action in case. Appeal from the Circuit Court of Shelby county; the Hon. Truman E. Ames, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed May 28, 1910.

George B. Gillespie, for appellant; L. J. Hackney, Hamlin, Gillespie & Fitzgerald, and W. C. Kelly, of counsel.

Richardson & Whitaker, for appellee.

Mr. Justice Puterbaugh delivered the opinion of the court.

This is an appeal by the defendant from a judgment in favor of the plaintiff for the sum for $325. The declaration contains three counts, the first two of which charge that the plaintiff, on January 14, 1907, shipped three carloads of cattle from Windsor, Illinois, to Indianapolis, Indiana, over the defendant's railway; that the defendant negligently ran and operated the train in which said cattle were placed, so that said train was left standing on various sidetracks between Windsor and Indianapolis, by reason of which said cattle did not arrive at Indianapolis within a reasonable time, whereby they became bruised, shrunk, and lessened in weight, and the market for said cattle declined, to the damage of the plaintiff, etc. The third count charges the same negligence, with the additional allegation, that the train did not arrive at Indianapolis within 35 hours, and that the defendant negligently permitted said cattle to remain in said cars in which they were transported, after they were loaded at Windsor, for the period of 35 hours, without food or water, contrary to the statutes of the state of Illinois and the United States, and that by reason of such negligent management and operation of said train, and such negligently keeping said cattle in the cars, without unloading, feeding or watering the same, the plaintiff was damaged.

In addition to the general issue the defendant interposed a special plea alleging that the shipment was an interstate shipment made in accordance with the interstate commerce

law, subject to the regulations of the Interstate Commerce Commission, and the provisions of the limited liability live-stock contract upon which the rate paid for the transportation of the cattle was based; which said contract was filed as a part of the official classification number 29, with the Interstate Commerce Commission. The contract in question is set out in *haec verba,* and it is then averred that the plaintiff did not comply with one of the provisions thereof, which made it a condition precedent to recovery that he should make an affidavit of claim and send the same to the freight claim agent of the defendant within five days after the cattle were removed from the car. To such plea the plaintiff replied, first, that the defendant received and accepted an unverified claim from the plaintiff and thereby waived the making of claim under oath; second, that while a contract was signed by the plaintiff with the defendant for transportation of plaintiff's cattle from Windsor to Indianapolis, as alleged in that plea, the plaintiff understood that in signing said contract he was doing so for the purpose of procuring transportation for himself from Windsor to Indianapolis, and not for the purpose of limiting or waiving any of his legal rights or consenting to the terms of said contract, and that the plaintiff never read said contract and did not know the terms and conditions of said contract, and was never advised or informed by any one as to its terms and provisions. A demurrer was overruled to said replications.

The evidence discloses the following facts: On January 14, 1907, the plaintiff had three car-loads of cattle at Windsor, which he intended to ship to Indianapolis over the Wabash Railway. Upon learning that the company could furnish but two cars for the purpose on that day, he inquired of Hurst, the agent of the defendant company at Windsor, if he could furnish him with three cars over his road. Hurst replied that he had but two cars on hand; that he did not know whether he could get a third one or not, but that he would try to do so. He afterwards informed the plaintiff that he had no car in sight, but that there was one at Mattoon which he could have brought to Windsor on the eastbound

train No. 71, due at Windsor at 4:20 o'clock in the afternoon, in case that train ran. Plaintiff then said he would bring his stock over to the defendant's road for shipment, whereupon Hurst suggested to him that he ship two car-loads on the Wabash and the other on the defendant's road, to which the plaintiff replied that he wished to ship all the cattle together. Hurst then told him that the notice was so short that he could not depend upon securing the third car, to which plaintiff replied that he desired to go personally with the shipment and would bring the cattle over to the defendant's road and await the arrival of the third car, and take his chances of getting out.

Train No. 71 in question was delayed because of a broken engine, and the third or additional car was sent on an extra train which arrived at Windsor at 8:15 o'clock in the evening. In the meantime the plaintiff had loaded the two cars that were already at Windsor. At 5:52 o'clock that afternoon, train No. 54, a local east bound train, arrived at Windsor. Prior to its arrival, Hurst asked the plaintiff to allow the two cars already loaded to go forward on No. 54, and let the third car follow whenever it was received; that the engine had broken down; that it was not definitely known when the extra would arrive at Windsor, and he thought it advisable to let the other two cars go forward. Plaintiff, however, held the shipment until the arrival of the additional car, and the three cars were finally attached to No. 62, the next train east, at 11:45 P. M., and arrived at Mattoon at 1:40 A. M. The shipment was then transferred through the Mattoon yards to train No. 92, the first east-bound train leaving after the arrival of No. 62. When train No. 92 arrived at Fontanet at 8:50 o'clock in the morning, is was side-tracked on account of the derailment of another train, which resulted in blocking the road until about 3:30 o'clock in the afternoon. The cars finally arrived at Indianapolis at 10:40 o'clock in the evening, and were left at the stock-yards.

The plaintiff signed and received a copy of the shipping contract set out in the defendant's special plea. He testified, however, that he did not read the same nor know nor was

he advised of its terms and conditions by any one. There is evidence to show that when the cattle were unloaded at the Indianapolis stock-yards, they were skinned and bruised and had shrunk at least 25 pounds per head in weight, and such condition was due largely to their being confined in the cars in transit for an unusual length of time. There is also evidence to show that the usual ordinary time for transporting cattle from Windsor to Indianapolis, is from ten to fourteen hours, and that twenty-eight to thirty-five hours is unreasonable. The court therefore did not err in refusing to direct a verdict for the defendant.

Inasmuch as the plaintiff refused to ship the first two cars on train No. 54 and elected to wait for the arrival of the third car the defendant cannot be held responsible for the delay occasioned in leaving Windsor, and proof of such delay was therefore incompetent. It also appears from the evidence that in no event after leaving Mattoon could the shipment have arrived at Indianapolis in time for market on the 15th, and the proof that the market on the 16th was ten cents lower than on the preceding day, was therefore improperly admitted, and the fifth instruction offered by the plaintiff, which referred to such decline in the market, in fixing the measure of damages, should not have been given.

It is further urged as ground for reversal, that the second plea was not answered by the replications of the defendant thereto, and that the court therefore erred in overruling the demurrer to such replications. The declaration seeks to recover upon the common law liability. By the plea it is sought to show that the shipment was made under the contract therein set out, by the terms of which the common law liability of the defendant is restricted. By the replications the plaintiff seeks to avoid the effect of the contract by the allegation that although he executed the contract, he never read the same and did not know and was never advised or informed by any one as to the terms and conditions thereof, thus in effect denying the execution of the contract, at least so far as the restrictive features were concerned. An issue of fact was thus joined upon the question as to whether or not

116    APPELLATE COURTS OF ILLINOIS.

Warren v. Cleveland, C. C. & St. L. R. Co., 156 Ill. App. 111.

the restrictions of the common law liability were actually known or assented to by the plaintiff. If the defendant, upon whom the burden rested, failed to show such assent, the restrictions of liability were not binding upon the plaintiff. Wabash R. R. v. Thomas, 222 Ill. 337. If the plaintiff did not know or assent to the special provisions of the contract it is obvious that he could not be held to have known that the special rate which it is claimed was accorded to him under the Federal Interstate Commerce Act, was conditioned upon his acceptance of the restrictive conditions of the contract. The contention that there is a conflict in the laws of the United States and those of the state, and the latter must give way to the former, is without force. There is nothing in the Interstate Commerce Act which prevents the law of the state where the contract is made or injury is done, from having full force and effect, even though in doing so the result be to nullify the limitation contained in the published schedule of rates and uniform live-stock contracts, and give the shipper larger damages than he could have obtained had he been bound by them. R. R. Co. v. Hughes, 191 U. S. 477; R. R. Co. v. Solan, 169 U. S. 133. The fact that a contract between the shipper and carrier violates the Interstate Commerce Act does not prevent or affect the shipper's right to recover for injuries or damages occasioned by the negligence of the carrier in the shipment. Insurance Co. v. Carriers Co., 91 Tenn. 537; Storage Co. v. Insurance Co., 151 U. S. 368; Kirby v. C. & A. R. Co., 242 Ill. 418. Moreover, the official classification of rates referred to in the special plea was not introduced in evidence, and inasmuch as we are not required to take notice of the same judicially, we are not called upon to determine questions dependent upon its contents.

The first and second refused instructions offered by the defendant were properly refused, as they in effect confined the defendant's liability to the delay, if any, caused by the crew of the train upon which the cattle were shipped. The plaintiff was not bound to prove that the negligence complained of was due solely to the particular individuals in charge of the train. If the delay was occasioned by any neg-

ligence in the general operation of the defendant's railroad, he was entitled to recover.

For the errors indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*