(No. 13122.—Reversed and remanded.)

The City of Chicago, Appellee, *vs.* The Municipal Engineering and Contracting Company *et al.* Appellants.

*Opinion filed April 21, 1920.*

1. Special assessments—*courts do not take judicial notice of ordinances.* If a city relies upon a general ordinance fixing the curb lines on unpaved streets as curing an insufficient description in an improvement ordinance it should introduce the general ordinance in evidence, as the Supreme Court, on review, will not take judicial notice of municipal ordinances.

2. Same—*when a local improvement is unreasonable and oppressive.* The construction of a water supply-pipe and five fire hydrants on an isolated street in the city of Chicago, in a sparsely peopled region twelve miles from the court house, without access to industries or convenient transportation, and largely at the expense of vacant property not in demand and for which no demand will be created by the construction of the improvement, is unreasonable and oppressive, as the question is not merely the requirements of the few people in the district for water but the effect of the improvement upon the property assessed.

3. Same—*judgment of council as to necessity for improvement is subject to review by court.* While the necessity, character and extent of a public improvement are committed to the judgment of the city council, the question whether that judgment has been exercised in a reasonable manner is open to review, and if, in view of the circumstances and surrounding conditions, the ordinance is unreasonable and oppressive, it is the duty of the court to declare it void.

Appeal from the County Court of Cook county; the Hon. John H. Williams, Judge, presiding.

ISAAC B. LIPSON, (GEORGE A. MASON, of counsel,) for appellants.

SAMUEL A. ETTELSON, Corporation Counsel, (JOSEPH J. SULLIVAN, H. A. TIFFANY, GEORGE P. FOSTER, and OTTO W. ULRICH, of counsel,) for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The city of Chicago applied to the county court of Cook county for the confirmation of an assessment of the cost of laying a water supply-pipe, with eight fire hydrants, in Eighty-third place, from South Hamlin avenue east to South Kedzie avenue. The appellants, who are the owners of seventy-nine vacant lots abutting on Eighty-third place, which were assessed, objected, and have appealed from the judgment overruling their objections and confirming the assessment.

One of the objections urged is that the ordinance does not fix the location of the fire hydrants. The ordinance provides that the fire hydrants shall be located at certain points from west to east, "twenty-four inches inside the curb line on the north side of West Eighty-third place." It was admitted that the street was not paved and there was no curb, but the appellee's counsel state that there is a general ordinance of the city of Chicago fixing the curb line on all unpaved streets according to the width of the street, and that on streets such as Eighty-third place, sixty-six feet wide, the curb line is fixed at fourteen feet from the lot line. Courts do not take judicial notice of municipal ordinances. We are confined to the record in the review of judgments brought before us, and no such ordinance as counsel refer to was introduced in evidence. If there was such an ordinance upon which the appellee relied it should have been shown. The location of the hydrants cannot be determined from the description in the ordinance and the

evidence in the record, and this objection should have been sustained.

It is urged that the ordinance is unreasonable and con- fiscatory. The proposed improvement is more than twelve miles from the court house in Chicago. The nearest street car service is one and a fourth miles east, at Seventy-ninth street and Leavitt street. The district is served by two railroads from the same station,—the Wabash and Grand Trunk,—having ten trains each day, half of which are flag trains. There are no factories or public buildings in the vicinity, and the nearest place of employment is at the Wabash railroad yards, two miles away. North of Seventy-first street is Marquette Park, comprising 320 acres, and south of Seventy-first street the main thoroughfare is Kedzie avenue, a platted street, unpaved and without sidewalks but with a wagon track which crosses fourteen or fifteen railroad tracks at Seventy-fifth street and three or four at Seventy-ninth street. The city limits are at Eighty-seventh street. South of Eighty-fifth street, which is the south line of the subdivision in which the appellants' lots are situated, is a cemetery. From Seventy-first street south for half a mile, and from Eighty-fifth street north, are truck farms. Eighty-third street is the first street north of Eighty-third place and is similar to it, except that there is no wagon track on it. Eighty-third place is the only street in the subdivision which has the appearance of a street. The wagon track winds through it in zig-zag fashion, and there are ten frame houses on the street from South Hamlin avenue to South Kedzie avenue. The owner of the most valuable of these testified that she had been offered, and had refused, $2500 for her house two months before she testified. There are cinder sidewalks along parts of the street and it is without sewers. There has been no development of the surrounding neighborhood for twenty-five years and there is no demand for the lots. Witnesses in the real estate business, experienced in outlying city improvements and

in new plattings, testified that in their judgment putting in water supply-pipes, sewers and pavements would not create a demand for the property because of the lack of transportation facilities; that transportation must come first before there would be any demand for the lots,—either surface street car transportation or steam transportation in a better form.

The objectors introduced evidence in regard to the value of the property, the condition of property in the neighborhood, the manner in which it was used and improved, the condition of the streets and of public improvements and the facilities for transportation, but the court frequently sustained objections to evidence of this character or of his own motion refused to permit its introduction. In regard to the question of transportation the court stated that the issue was as to the necessity and requirements of the people on the street for water and it was not going to be developed into a question of time-tables. This was an erroneous conception of the theory upon which a special assessment for a public improvement may be made; and the same erroneous view prevailed throughout the trial as to the object of inquiry in regard to the character of the surrounding property, the extent to which it was occupied, the manner in which and purpose for which it was used, the extent to which it had been improved and the character of the improvement. The question at issue was not merely the necessity and requirements of the people for water, but the effect of the improvement upon the property affected. There is no question that it would be of great convenience and advantage to the people occupying the ten houses scattered along this street to have water brought in pipes to them, but this, alone, would not justify assessing a large portion of the cost of doing so upon other property. The assessments varied from $36 to $46.50 on the appellants' lots. The appellants' evidence tended to show that the lots were not worth more than from $35 to $50 apiece, though there

was also evidence of greater value. There is no market for them. They are not wanted. While the necessity, character and extent of a public improvement are committed to the judgment of the city council, it is a question for determination by the court as to whether that judgment has been exercised in a reasonable manner, and if, in view of the circumstances and surrounding conditions, the ordinance is unreasonable, unjust and oppressive, it is the duty of the court to declare it void. The construction of this improvement at a cost of $9481 on this isolated street, in a sparsely peopled region, without access to industries or convenient transportation, largely at the expense of vacant property not in demand and for which no demand will be created by the construction of the improvement until there is a prospect of better facilities for transportation, would be unreasonable and oppressive. For these reasons the appellants' objections should have been sustained.

The judgment of the county court will be reversed and the cause will be remanded, with directions to sustain appellants' objections and dismiss the petition as to their lots.

*Reversed and remanded, with directions.*