James J. Butler, Administrator of the Estate of Martha Parido, Deceased, Appellee, v. Illinois Traction, Inc., Appellant.

Gen. No. 8,221.

136

Opinion filed January 24, 1929.

Sigmund Livingston, for appellant.

Thomas S. Weldon and Costigan & Wollrab, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

This suit is brought by appellee, administrator of the estate of Martha Parido, deceased, in behalf of her next of kin, to recover damages for injuries causing death.

Appellee's intestate, on the evening of August 10, 1927, while riding as a guest in the car of her son, David Parido, in the outskirts of the City of Bloomington, was struck at the intersection of the right of

way of appellant's railway and Stillwell street by one of the electric passenger cars of appellant's railway, and suffered injuries resulting in her death.

The declaration contained two counts, the first count charging that "by reason of the carelessness, negligence and improper conduct of the defendant by its servants, said electric car then and there ran into, struck and collided with said automobile," etc. And the count further charges: "Said defendant, at that time and for a great length of time prior thereto, maintained at said intersection an electric signal or warning bell for the purpose of warning persons traveling along Stillwell street of the approach of cars along defendant's tracks, and . . . defendant had negligently permitted said bell to become defective and failed to keep the same in good repair, but on the contrary, permitted it to become defective and out of repair so that it would not or did not then and there make a sufficient or reasonable alarm to warn the public traveling on said highway at or near said intersection of the approach of the defendant's said car," etc. And it was charged that, "through the negligence of the defendant in permitting said signal bell to be out of repair and in a defective condition, plaintiff's intestate did not have reasonable and proper warning of the approach of the defendant's car and through said negligence plaintiff's intestate was then struck by said interurban car and killed." And it was further charged in said first count that "said defendant did not, prior to the approach of said cars, sound any warning, by whistle or otherwise, to sufficiently give said deceased a reasonable or proper warning of the approach of said car at said crossing, and that," etc.

The second count bases negligence upon the charge that "defendant's servants then and there drove said interurban car as it crossed Stillwell street and immediately prior thereto, at such high, dangerous and excessive rate of speed that by and through the negli-

gence, carelessness and improper conduct of the defendant and its servants in that behalf, the said interurban car . . . struck with great force against said automobile, and the plaintiff was thereby . . . greatly bruised, crushed and wounded and as a result thereof . . . died.''

Appellant pleaded the general issue to both counts. There was a trial by jury, a verdict and judgment in behalf of appellee in the sum of $2,500 and appellant has brought the record to this court, by appeal, for review.

Stillwell street, near the western city limits of the City of Bloomington, runs north and south. At the intersection of Stillwell street and the crossing in question is the city dump. The Nickel Plate or Lake Erie and Western Railroad right of way intersects the right of way of appellant's railroad a short distance east from the crossing where the injury occurred. The Lake Erie and Western tracks are elevated and appellant's railroad runs through a viaduct under the Lake Erie and Western tracks. Between 75 and 100 feet north of the interurban viaduct is another large viaduct, under the Lake Erie and Western tracks, under which Stillwell street passes. At this point, where Stillwell street goes under the viaduct, it enters Sheridan street and then Stillwell street proceeds in a northerly direction on the east side of the Lake Erie and Western right of way. The automobile in question came from the north, reached Sheridan street and made its turn, proceeding under the viaduct and then proceeding south about 100 feet to the crossing in question. At the intersection of Stillwell street and Sheridan street, where the automobile turned to proceed under the viaduct, is a large open space and in this vicinity appellant's, tracks are in clear and unobstructed view for more than 600 feet. In fact, appellant's track makes its turn and crosses Sheridan

street between 500 and 600 feet east of the Stillwell and Sheridan street viaduct. There is not a house or obstruction of any kind between Sheridan street and appellant's right of way. When the embankment of the Lake Erie and Western right of way is reached, going south, there is an obstruction until one reaches 16 feet north of the crossing in question. From this point a car approaching may be seen through the viaduct. Both are very large viaducts, especially wide and afford unusual opportunity for sight through them. There is uncontradicted testimony in the record, showing from measurement that a person standing 6 or 7 feet north of appellant's north rail can see the rails on appellant's track through the viaduct, the direction from which appellant's car was coming for a distance of 275 to 300 feet, and standing 12 feet north of said rail one can see the rails in the same direction for a distance of 125 to 150 feet.

There was testimony offered by appellee tending to show that the driver of the automobile stopped his car there 4 or 5 feet north of appellant's north rail. Other witnesses testified that the car stopped or nearly came to a stop 12 to 15 feet north of the rail and some of appellee's witnesses testified that the occupants of the car were looking to the eastward along appellant's track as they approached the crossing. David Parido and his wife sat in the front seat and appellee's intestate sat alone in the rear seat. Some of the appellee's witnesses testified that they did not hear the bell ring at the crossing at and before the injury, and other of appellee's witnesses testified that it did not ring, while appellant produced numerous witnesses whose testimony tended to show that the bell was in good working order and that it did ring. Numerous witnesses for appellant and some of the witnesses for appellee testified that they heard the whistle of the car two blocks above, after the car left Market street, and

that there were long blasts and short blasts. Some of appellee's witnesses heard the whistle two and three blocks further away from the car than the automobile, and some of appellee's witnesses testified that after they heard the whistle and saw the automobile start to cross the tracks they expected trouble.

Appellee produced witnesses, whom appellant claims were not competent to testify, who stated that the electric car was traveling at a speed from thirty to forty-five miles per hour. A larger number of witnesses—passengers and those disinterested—testified that the speed of the car did not exceed 18 to 25 miles per hour. There were no trains on the Lake Erie and Western railroad or other means of disturbance to interfere with sound. William Brown, a witness for appellee, was upon the dump. He heard a long whistle a few seconds before the automobile emerged from the viaduct. Brown says the automobile was going 4, 5 or 6 miles an hour before it came to the crossing, and that it made a full stop at 4, 5 or 6 feet north of the north rail at the crossing. Other witnesses in behalf of appellant, living in the vicinity who saw the accident, testified that the automobile emerged from the viaduct and making no stop proceeded at its regular speed upon and over the crossing until it was struck. The motorman on the electric car saw the automobile when 84 feet from the crossing, reversed his power and set his brakes, but was unable to stop his car until after it had struck the automobile and traveled about 200 feet beyond the crossing. There is no testimony in the record showing, or tending to show, within what distance such an electric car can be stopped, the weight of the car, the grade or anything upon those subjects. There were proofs offered tending to show that the rails were covered with oil and broken eggs below the point where the automobile was struck, which might have deterred an earlier stoppage of the car. To give the proofs the most liberal and charitable intendment in behalf of

appellee in this cause, it may be said that there was a sharp conflict between appellee and appellant as to all but one material issue in the case, the due care and caution on the part of appellee's intestate at and before the time of the injury; the question whether the bell at the crossing was ringing and the speed of appellant's electric car and the question of negligence on the part of appellant as to the second count. There is no conflict in the proofs as to the whistle of the electric car being sounded at different times during the last 600 feet it traveled before reaching the viaduct.

Appellant assigned numerous errors in its motion for a new trial, which were overruled, all of which have been assigned as error upon this appeal.

It is contended strenuously in this case that there are no proofs in the record showing that appellant was guilty of negligence. There was no law or ordinance in force at the time in question, requiring the maintenance of signal bells at the crossing. It is contended that if the electric car, by proper blasts of its whistle capable of being heard at the crossing, properly and sufficiently furnished a warning for drivers at the crossing, it is immaterial whether the signal bells were rung and whether the signaling device was in proper repair or not. The declaration charges that appellee's intestate received no notice or warning of any kind whatever of the approach of the train, and that none was given. The testimony is overwhelming by witnesses both for appellant and appellee that the whistle of the electric car was repeatedly heard, after the car left Market street, two blocks north of the viaduct and near the viaduct, and that the blasts were heard for a distance of three blocks in a direction opposite from the crossing and the direction from which the car was coming. If the verdict and judgment in this case rested solely upon the first count in the declaration, we should have no hesitancy in holding that it was against the manifest weight of the testimony. There is no

charge in the declaration of any special conditions creating special danger at the crossing in question, requiring the maintenance of signal bells, a watchman or gates. (*Opp v. Pryor,* 294 Ill. 538, 541.) Under the statute in force at the time of this injury, appellant was not required to ring the bell and sound the whistle. *Chicago, B. & Q. Ry. Co. v. Sack,* 129 Ill. App. 61. In *Chicago, B. & Q. R. Co. v. Damerell,* 81 Ill. 450, 452, the court said:

"But the statute only requires that the company shall ring the bell or sound the whistle. This is the precaution which the law has prescribed that the company shall make use of, on approaching the crossing and by ringing a bell, the company performs its statutory duty in this regard."

As to the speed of the electric car, it is difficult to read this record and not come to the conclusion that the car was traveling at a speed not to exceed twenty-five miles an hour. There were witnesses for appellee who testified that in their judgment the car was traveling at a speed of forty-five miles per hour. It may be that their appearance before the jury was more impressive than what they testified to in fact. There was sharp conflict in the testimony as to the speed of the car. We would not be warranted, under the second count in the declaration, in holding as a matter of law that appellant's car was traveling at a speed in excess of or under twenty-five miles an hour.

Appellant contends that appellee's intestate was not in the exercise of due care for her own safety at and just before the time of the accident. As to the driver of the car the facts are more easily determined. Appellee's testimony shows that the automobile approached the crossing at a speed of ten to twelve miles per hour and stopped, some of the witnesses state 5 to 7 feet north of the north rail, other witnesses for appellee stating 10 to 12 feet north of the rail. If the driver stopped 5 to 7 feet north of the rail he could see

the rails up the track and a car coming 275 to 300 feet away. If the driver stopped his car 12 feet north of the rail his vision was clear and he could see a car and the rails 125 to 150 feet away. The testimony of appellee's witnesses is that all of the occupants of the car were looking up the track towards the place from which the car was approaching. Both sides have amply supplied the court below and this court with photographs showing the entire situation. It is absurd to presume that the driver would start up his automobile at either distance from the north rail with an electric car in plain view 125 to 150 feet away or 275 feet away, and yet he could have done so and traveled over the intersection at the rate of five miles per hour, as the witnesses testified he did do, and cleared the crossing if the electric car had been 135 feet away and traveling at the rate of forty miles per hour. It follows that the witnesses are simply mistaken or are not stating the truth. The driver, if he was looking up the track, must have seen the approaching car in ample time to have stopped his automobile and avoided the injury. The physical situation, together with the uncontroverted testimony, demonstrates that the driver of the car was guilty of contributory negligence. The driver of the car, David Parido, was a son and next of kin of the deceased, but it is not urged that the negligence of David Parido is a bar to recovery under the rule in *Hazel v. Hoopeston-Danville Motor Bus Co.,* 310 Ill. 38, as David Parido was killed in the same accident. Neither is the negligence of the driver to be imputed to the deceased. But it is insisted that it was the duty of the deceased to use all reasonable and prudent means on her part to avoid the danger (*Grifenhan v. Chicago Rys. Co.,* 299 Ill. 590; *Opp v. Pryor, supra*), and this she did not do.

The deceased sat in the rear seat of the automobile and her son with his wife occupied the front seat. There is some testimony tending to show that the view

up the tracks was obstructed at a point 16 feet north of the north rail and the automobile or some part of it may have stopped 12 feet north of the rail. It is not clear that this court could hold on the proofs submitted, as a matter of law, that the deceased was guilty of contributory negligence.

The court gave four instructions for appellee and appellant assigns error upon the giving of each. It would prolong this opinion to too great length to take up all of the assignments of error, serve no useful purpose and is not necessary to a decision in the case.

The court gave appellee's fourth instruction, which is as follows: "You are instructed that if you find from a preponderance of the evidence that the plaintiff's intestate was struck and killed, by defendant's interurban car, at a point on the defendant's tracks where the defendant's servants or agents had reason to anticipate the appearance of vehicles upon the track; and if you further find from the evidence that the defendant at the time of the injury was running its cars at a rate of speed which, under the facts and circumstances shown by the evidence, was careless, negligent and dangerous, and in consequence thereof struck and killed Martha Parido; and if you further find from the evidence that the said Martha Parido was in the exercise of ordinary care for her own safety immediately before and at the time she was struck and killed, and that her death resulted in pecuniary loss to her husband and next of kin, then your verdict should be for the plaintiff."

The giving of this instruction was error. (*Chicago, B. & Q. R. Co. v. Lee,* 68 Ill. 576, 582; *Chicago, B. & Q. R. Co. v. Florens,* 32 Ill. App. 365, 367; *Wabash R. Co. v. Stewart,* 87 Ill. App. 446, 453; *Cox v. Chicago & N. W. Ry. Co.,* 92 Ill. App. 15, 20; *Illinois Cent. R. Co. v. Johnson,* 221 Ill. 48.)

The second count in the declaration charges negligence, based solely upon the speed of the electric car. The doctrine of the cases cited and the law upon that subject as settled by this court in *Chicago, B. & Q. R. Co. v. Florens, supra,* is fully set out on page 367, as follows:

"The whole case is thus narrowed down to the speed of the train and the measure of negligence that may be predicated thereon. According to the estimates of the various witnesses the speed was somewhere between eighteen and forty miles per hour. There was no legal provision regulating the rate of speed at that place.

"As was said by the Supreme Court in *C., B. & Q. R. Co. v. Lee,* 68 Ill. 582, 'There is nothing in the charter of the company nor in the general laws of the State, which imposes any restraint as to the speed its trains may run.

" 'Where not prohibited by municipal regulations it is apprehended the company may adopt such rate of speed as it shall deem advisable, provided always it is reasonably safe to the passengers being transported. It will be subject to no liability for the rate adopted if not otherwise at fault.'

"To the same effect see *W., St. L. & P. Ry. v. Neikirk,* 13 Ill. App. 387; *Same v. Same,* 15 Ill. App. 172. If it be said if the train had been running at a lower rate of speed it could have been stopped in time to prevent the accident, we think the answer is that whether going at the highest or lowest estimated rate it would have been impossible to have stopped after the team was discovered to be in danger.

"In *C., B. & Q. R. R. Co. v. Damerell,* 81 Ill. 453, the Supreme Court remark: 'This court has frequently asserted the doctrine that it is not the duty of the engine driver on nearing a road crossing to stop his train for the purpose of avoiding a collision with a wagon and team he may see approaching the crossing.'

Hence there would have been no duty to stop or attempt to stop until the team was seen to be going on the track and in danger, and if, when it so appeared, no possible effort would be sufficient to stop and avoid the collision, then there would be no negligence in that respect.

"We are unable to see how the rate of speed, if too great, can be regarded as the proximate cause of the accident."

In the case at bar the conduct of the motorman in failing to stop his car is not charged as negligence, and nothing in the proofs indicates that it would have been possible for the motorman to stop the car to avoid injury. But it is contended by appellee that the instruction in question differs from the instruction in *Wabash R. Co. v. Stewart, supra,* by adding to the instruction in this case the language, "which, under the facts and circumstances shown by the evidence, was careless, negligent and dangerous." To what facts and circumstances does appellee's counsel refer to be taken in connection with the rate of speed to constitute negligence? No such facts and circumstances are set out in the declaration and therein lies the vice of the instruction, that the jury are permitted to roam at will among the facts and circumstances in this case and determine at will what facts and circumstances in connection with speed constituted negligence and what facts and circumstances in connection with speed did not constitute negligence. The giving of the instruction by the court warranted the jury in believing that certain facts and circumstances proven, in connection with speed, would warrant a finding of negligence on the part of appellant, when the issues as to the existence of such facts have never been passed upon by the jury, but, by the giving of the instruction, are assumed by the court. As the court said in *Illinois Cent. R. Co. v. Johnson, supra,* page 48: "But it was the exclusive province of the

jury to determine those facts, and they should have been submitted to the jury for determination without any intimation or assumption as to the proper conclusion. In the case of *Chicago & Northwestern Railway Co. v. Moranda,* 108 Ill. 576, the court said: 'Where there is evidence before a jury upon which it is legally admissible, there may be difference of opinion, it is error to allow any opinion of judge or court to be obtruded upon the jurors to influence their determination.' Where the evidentiary facts will justify different conclusions, the question of negligence is one of fact, and instructions should always be drawn so as to state the law upon a supposed or hypothetical state of facts, leaving the jury to find the fact. Instructions assuming the existence of any material fact have always been condemned.''

The facts and circumstances upon which appellee expected to predicate negligence should have been set out in the declaration. (*Illinois Cent. R. Co. v. Johnson, supra; Wabash R. Co. v. Stewart, supra; Chicago, B. & Q. R. Co. v. Lee, supra.*) The instruction contained the further clause: ''at a point on the defendant's tracks where the defendant's servants or agents had reason to anticipate the appearance of vehicles upon the track,'' etc. Under the proofs the crossing in question was on the outskirts of the city where there were large open spaces, unoccupied by buildings of any kind, and the clause in question could as well be applied to any highway or street crossed by railroad tracks for the reason that the very existence of a highway or street warrants one in anticipating that vehicles and motor cars will appear thereon. This part of the instruction could only tend to confuse the jury.

Appellee further urges that his instruction number four is based upon Order No. 123 of the Illinois Commerce Commission, dated June 22, 1927. No such order is referred to in the pleadings or furnished in the

proofs. Courts will not take judicial notice of orders entered by the Commerce Commission. (*Pennsylvania Co. v. A. F. Cook & Co.*, 185 Ill. App. 257, 261; *Warren v. Cleveland, C., C. & St. L. Ry. Co.*, 156 Ill. App. 111.)

A city ordinance concerning the operation of railroads, when relied upon as material to an action, must be specially pleaded and offered in evidence. The court will not take judicial notice thereof. (*City of Chicago v. Municipal Engineering & Contracting Co.*, 292 Ill. 614.)

Appellant assigned error upon the modification and refusal by the court to give certain instructions for appellant. Some of the instructions should have been given. Other errors are assigned, but we presume upon another trial that any errors that occurred upon the former trial will be avoided.

The judgment of the circuit court of McLean county is reversed and the cause remanded for another trial.

*Reversed and remanded.*